405 A.2d 1266

COMMONWEALTH of Pennsylvania ex rel. Suzanne
J. ZERCHER

v.

Robert W. BANKERT.

**Appeal of Suzanne J. ZERCHER.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided June 13, 1979.

Gerald E. Ruth, York, for appellant.

John M. Boddington, York, for appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal from an order of Judge Buckingham of the York County Court dated October 31, 1977 remitting $1740.00 of arrearages the appellee, Robert W. Bankert, owed on an order providing for the support of his three children, custody of which had been awarded to their mother, Suzanne Zercher, formerly Suzanne Bankert. The reason given by Judge Buckingham for remitting the arrearages was that the appellant had denied the visitation rights of the father for one year from December 1975 to December 1976 by intentionally and wilfully withholding information of their whereabouts for that period.

The order of October 31, 1977 remitting the arrearages also provided that the existing order of support be continued, and in addition, directed appellee to pay $20.00 per month on the balance of arrearages then owing. Thus, the only issue before us is the propriety of that part of the order remitting $1740.00 of the arrearages. A review of the history of the case is helpful in resolving this issue.

On petition by the mother, an order, dated May 8, 1974, was made providing that appellee father pay $215.00 per month for the support of his three children. Subsequently, on August 19, 1975, by agreement,[1] this was modified to $145.00 for two children, Jennifer A., born August 27, 1966, and Sean M., born April 17, 1962. Robert was not included because he had "graduated May 31, 1975", although he would not have reached the age of 18 until January 21, 1976.

1. This was within the period during which the arrearages were remitted.

In November or December 1974, the father had instituted habeas corpus proceedings in York County to establish visitation rights, and a hearing on his petition was set for December 6, 1974, which was postponed until February 24, 1975 because the mother was unable to attend for medical reasons. However, this order, signed by Judge Blakey, did provide for temporary visitations until final hearing. Subsequent to December 6, 1974, the mother moved to Colorado for reasons of health on the advice of her doctor and took the children with her. Appellant or her counsel failed to appear at the hearing scheduled for February 24, 1975 and a rule was directed to her to show cause why she should not be declared subject to the continuing jurisdiction of the York County court, and why she should not be held in contempt for failure to observe the interim visitation order previously entered. Said rule was to be served by ordinary mail addressed to her at 8915 Corona Street, Apt. 105, Thornton, Colorado, 80229, and a copy sent to her York County attorney, Allen H. Smith, Esq. This rule was made returnable March 7, 1975 at which time a hearing was to be held. The order also provided that "if neither the respondent nor an attorney representing her appears at such hearing, this court shall take such further action as may be appropriate without further notice which may include a civil penalty to be offset against any support order now in effect."

Neither appellant nor her counsel appeared at the hearing scheduled for March 7, 1975, although the court did receive, informally, information that led it to conclude that he, (Judge Blakey) could not find her in contempt and he decided not to take any further action on the husband's petition at that time. However, in a supplemental order also dated March 7, 1975, Judge Blakey confirmed the father's right to visitation, and that the York County court still had jurisdiction of the parties and the subject matter. He further observed that "the schedule previously established should be modified so that the father should have substantial visitation during the summer months, and on such other occasions as he would be financially able to travel

to Colorado to exercise the same." He directed that a copy of the order be sent to appellant at the address in Colorado previously stated "and reminded her of her duty to keep the petitioner posted as to her whereabouts so that the subject of visitation can later be pursued. A failure in this regard would be an indication that the documents forwarded do not accurately describe the situation and no doubt any court later considering the subject would consider such failure as evidence that respondent is effectively seeking to frustrate the father's right of visitation."

The next event to occur was the agreement, dated August 19, 1975, previously referred to, whereby the support payments were reduced from $215.00 per month for three children to $145.00 for two. This came about, through a letter sent by the Domestic Relations office of the York County court to appellant addressed to her at P. O. Box 761, Indian Hills, Colorado, 80454, seeking information which was responded to by appellant and the requested information given. Judge Buckingham signed the order dated August 19, 1975 approving the reduction.

On October 10, 1975, Oliver E. Frascona, Esq., a lawyer of Boulder, Colorado, wrote to the Domestic Relations office of York County seeking information as to the proper procedure to follow to secure payment of arrearages due the appellant on her order of support, since no payments had been received since April 1975. However, in a letter dated October 2, 1975, that office had already notified the appellee of his arrearage in the sum of $1016.00, and directed him to pay $165.00 per month instead of $145.00, the additional $20.00 to be on arrearage. In response to that letter, appellee wrote for a statement of his account which was sent to him on October 10, 1975, and he was subsequently notified by letter, dated October 17, 1977, to appear in court on October 31, 1977 for a hearing relating to his failure to comply with the support order. However, in the interim on November 6, 1976, the appellee filed a petition to suspend the order for support for the reasons "the complainant, who has an address of P. O. Box 761, Indian Hills, Colorado, has hidden the

actual location of these children from the defendant." On November 5, 1976, without taking any testimony, Judge Buckingham acted on the petition and directed appellant to deliver within one month to the Domestic Relations Office a complete and detailed description of the physical location of the children and this means the house, street, number and specific direction how to reach them; and to keep that office advised at all times if they are moved. This order also recognized the existence of arrearages on the support order, and directed the appellee to commence paying at least $20.00 per month on account of them; and provided further "We may, under the circumstances, reduce some of the arrearages if we have found that this complainant has intentionally hidden these children, but we will reserve our judgment on that matter until later."

Appellant responded to that order and did deliver a description of the physical location of the children within the allowed period. There is nothing in this record to show they were not with their mother at all times.

Immediately following this disclosure, appellee sought to enforce in Colorado his visitation rights granted in York County, Pennsylvania, but the Colorado courts have been slow in aiding him. He has estimated his expense in this unsuccessful endeavor at $2,000.00 which he seems to be trying to recoup by seeking the remission of the arrearages under discussion.

On October 31, 1977, the matter came up for hearing before Judge Buckingham and according to his order of that date, "for review and the defendants' being here on an informal attachment". In that same order, he also stated, "We also find as a fact that for approximately one year, commencing the end of December 1975, to approximately on or about the end of December 1976, the defendant did not know the physical whereabouts of the children, that the complainant in the case wilfully and deliberately kept the physical whereabouts of the children from the defendant and did not deliver such description of the location of the children until she received a copy of our order dated November 5, 1976, etc."

Our review of the record made at the hearing at which appellant was represented by counsel, the result of which the foregoing order was entered, indicates nothing more than the statement of the appellee-father, that he did not know the physical whereabouts of his children from December 1975 when they were moved to Colorado by their mother until January 1976 when the mother sent him a map explicitly showing him how to reach them in Colorado. However, it fails to show he made any effort to locate them prior to receiving the map, although there were avenues open to him to do so.

■ Generally, matters of support are separate and independent from problems of visitation and custody, and ordinarily a support order must be paid regardless of whether the wife is wrongfully denying the father's right to visitation. *Commonwealth ex rel. Chila v. Chila*, 226 Pa.Super. 336, 313 A.2d 339 (1973). In *Commonwealth ex rel. Firestone v. Firestone*, 158 Pa.Super. 579, 45 A.2d 923 (1946) it has been expressed that the duty of a father to support his children is "well nigh absolute", and in *Commonwealth ex rel. Crane v. Rosenberger*, 212 Pa.Super. 144, 239 A.2d 810 (1968) "Ordinarily, the amount of the support order must be paid regardless of whether the wife is wrongfully denying the father's visitation rights." In *Commonwealth ex rel. Mickey v. Mickey*, 220 Pa.Super. 39, 280 A.2d 417 (1971), this statement was repeated with the following addition, "This is true even if the wife's action places her in contempt of court. *Firestone*, supra." Also, "Even assuming that the mother improperly removed the children from defendant's home to another state, her misconduct in doing so cannot destroy the right of those children to support from their father." *Commonwealth v. Hopkins*, 241 Pa. 213, 88 A. 442 (1913). We again note, in the present case, that Judge Blakey, at the hearing held March 7, 1975, accepted appellant's reasons for moving to Colorado with her children as sufficient, and refused to hold her in contempt.

The lower court relies heavily on *Com. ex rel. Shaffer v. Shaffer*, 90 York Legal Record 130 (1976), which we af-

firmed per curiam in 247 Pa.Super. 618, 373 A.2d 1142 (1977). In *Shaffer*, the lower court cites *Chila*, supra, for the principle that where the custodial parent refuses to reveal the whereabouts of herself and her children to the non-custodial parent and the Domestic Relations office of that parent, the custodial parent is not entitled to a support order against the non-custodial parent until such time as this information is given to the latter. However, that case, as did *Chila*, involved extreme examples of wrongful conduct on the part of the mother. *Shaffer* is clearly distinguishable from the instant case, and from the case authority cited above. As stated by Judge Price, in *Kramer v. Keely*, 265 Pa.Super. 58, 401 A.2d 799 (1979), "[a]bsent the extreme circumstances present in *Chila*, we are loath to deprive the child of support payments because of the improvident action of the mother."

■ Our review of the record in this case indicates no extreme improvident actions of the mother as to justify depriving her children of support. She was in constant communications with the Domestic Relation office of York County; through correspondence with that department, she agreed, with the father, to a reduction in the order because of the graduation from high school of her oldest child; she was represented by Allen H. Smith, Esq. in York County, and by a law firm in Boulder, Colorado; the court, as well as her husband, knew she lived in Indian Hills or at 8915 Corona Street, Apt. 105, Thornton, Colorado; he also knew she was divorced, remarried and again divorced, but until the order was signed by Judge Buckingham ordering her to disclose the physical whereabouts of her children, she was never asked where they were. Under the circumstances, we fail to find in the record evidence of a willful or intentional concealment of the children by their mother for the purpose of denying their father his right of visitation. Furthermore, being in default in his payments, appellee was not in a position to ask for a reduction or cancellation of arrearage. *Commonwealth ex rel. Goodwin v. Goodwin*, 413 Pa. 551, 198 A.2d 507 (1964). His refusal to make his payments after

April 1975 was deliberately done to enforce his visitation rights and, therefore a flagrant violation of the order of support.

We are constrained to hold that the lower court abused its discretion in cancelling the arrearages under discussion.

Although the appellant seeks a remand of this case for a further hearing so she may offer testimony that she did not intentionally and wilfully conceal the whereabouts of her children, we find no need for that action since we find nothing to refute. There is no evidence that she did so. Therefore, the order is reversed and the arrearages reinstated, payment of same to be made as the lower court may direct.