510 A.2d 359

**Nicholas STREDNY, Appellant,**

v.

**Paula GRAY, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1986.

Filed June 4, 1986.

Joseph J. Savitz, Wilkes-Barre, for appellee.

Before ROWLEY, MONTEMURO and KELLY, JJ.

KELLY, Judge:

This appeal is from an order modifying an existing support order and directing appellant to pay the sum of $4,255.00 representing one-half of school expenses of the minor daughter for the 1983–84 school term, plus arrearages under a pre-existing support order. For the reasons stated below, we affirm.

The facts of this case, as presented to the Domestic Relations Master, hereinafter the Master, and affirmed by the lower court, are as follows. The parties were married in 1971, and were subsequently divorced in 1974. Both have since remarried other persons. There was one child born of the marriage, Darrah, who is the subject of this support modification dispute. Appellant/father now has a stepdaughter by reason of his remarriage, and appellee/mother has a second daughter by her present spouse, a chiropractor. Darrah resided with appellee until June 10, 1984 when she began residing with appellant.

Darrah was placed by appellee, the custodial parent, in a private school for emotionally disturbed children for the 1983–84 school term. The school tuition is $8,500 per school year. Appellee, on October 12, 1983, filed a petition for modification of the existing support order so that appellant would contribute to the tuition payments; appellant, on the same day, filed a request for reduction of the existing support order which mandated payment of $40.00 a week

during periods of appellant's employment, and $15.00 a week during periods when appellant collected unemployment compensation.

Appellee, after the birth of Darrah, worked at the Perkin-Elmer Corporation and earned $30,000 annually. She quit that job at the birth of her second child. Appellee now operates a business at a flea market three days a week. Appellee's gross income from this business was approximately $7,000 in both 1982 and 1983. Appellee's decision not to return to full-time work after the birth of her second child was based on a fear that her second child would develop emotional problems, as had her first.

Appellant/father, a college graduate, is seasonally employed in his father's business, the Dallas Nursery, as a horticulturalist. From November through April appellant collects unemployment compensation. Appellant testified that his combined income sources totalled approximately $11,000 in 1983 (R. at 52a). Appellant pays the mortgage on his home which is built on his father's property; his father cosigned the loan for the home. (R. at 51a). Appellant testified that in the future his home will be free of the mortgage debt. Furthermore, he will own one-half of his father's business; his brother will own the other half (R. at 57a). Appellant's present wife is unemployed and receives $40.00 weekly for support of her child by a previous marriage.

The record also discloses the following facts, the implications of which bear directly on the lower court's holding in this action. Appellant was able to borrow money from a local bank to finance alterations and additions to his home; appellant gave no collateral for the $15,000 he borrowed. Appellant's attorney characterized this loan as a mortgage but the record supports the Master's finding that the loan was in fact unsecured (R. at 60a). Appellant listed his monthly expenses, including Darrah's weekly support payments, as being $1,481.80 monthly or approximately $17,780 annually (R. at 103a). This amount clearly exceeds his alleged annual income of $11,000. Appellant admitted on

cross-examination that he and his wife had recently travelled to Florida; he refused to characterize the trip as a vacation but said it was conducted in pursuit of his wife's family business. Appellant does not own a car but has full use of the car owned by his father's business. Appellant had a documented history of being in arrears for his support payments; for example, at the time of the March 10, 1984 hearing before the Master, appellant owed $1,045 in support payments (R. at 27–28a).

Darrah's annual expenses calculated from March 1983 to March 1984 totalled $14,844, including the $8,500 tuition payment, or $6,344 excluding tuition (R. at 31a). Appellant during this year had contributed *only $200* of his total obligation (R. at 28a) of $1,245 (R. at 27a). Appellee, in addition to paying Darrah's expenses and tuition, maintained payments for all Darrah's health and life insurance; Darrah had a kidney removed at age 5 and consequently has special medical considerations (R. at 32a).

Appellee stated she consulted appellant about her decision to enroll their daughter in private school (R. at 28a–29a). Appellant agrees with appellee that their daughter is emotionally disturbed and that the school was "a good idea." (R. at 62a). Appellee further testified, and was not contradicted by appellant, that appellant visited the private school in New Hampshire and approved of it (R. at 14a). Appellant assumed his support payments would be used as part payment of the tuition (R. at 21a).

Appellee also stated, again without contradiction, that appellant's present wife and her parents as well as appellant's own parents volunteered to contribute to Darrah's tuition and expenses but "Nicky's (appellant's) answer was 'No', that's not their responsibility .... it's my responsibility." (R. at 35a and 36a).

The Master found that, based on appellant's ability to secure a loan without collateral, and the other factors cited above, the appellant had access to funds beyond those appellant disclosed to the Master. The Master concluded it

was not unreasonable, therefore, to order appellant to pay one-half of the child's tuition expenses.

Upon review of the Master's report, the Honorable Hourigan, P.J., entered an order incorporating the Master's findings, dismissing appellant's exceptions thereto, and affirming the decision of the Master.

Appellant raises two issues for review:

1. Whether the Court below abused its discretion in ordering appellant to pay the sum of $4,255 for special education school expenses for his minor daughter to the appellee directly, when appellee never consulted with appellant regarding this expenditure, nor did appellant ever agree he would be responsible for this expense.

2. Whether the Order of the Court below ordering appellant to pay the sum of $4,255, representing payment for special education school expenses for his minor daughter is confiscatory and violative of existing law based on appellant's income.

(Appellant's brief at 3).

Our review of the lower court's decision is limited to ascertaining whether there was sufficient evidence to sustain the order and whether there has been an abuse of discretion by the lower court. *Berry v. Berry*, 278 Pa.Super. 30, 419 A.2d 1340 (1980); *Commonwealth ex rel. Hall v. Hall*, 243 Pa.Super. 162, 364 A.2d 500 (1976).

As to appellant's first argument, appellant's own sworn testimony belies his assertion that he was not consulted and did not agree to having his daughter enrolled in special school. We reproduce the pertinent testimony here:

Q. You heard your ex-wife testify that you helped in selecting a school for your daughter, Darrah. Is that true?

A. No, not exactly. She presented—her and her ... her and her husband a possibility of Darrah going to school
...

Q. Did you consent to it?

A. Yes, I thought it was a good idea.

(R. at 62a).

Furthermore, appellant declared to appellee and members of both families at a group meeting that it was his responsibility, his and appellee's responsibility alone, to raise money for the tuition. (R. at 35a–36a). Appellant asserted his belief that his arrears, if paid, would be applied to Darrah's tuition. (R. at 21a). This indicates to this Court that appellant had no quarrel with his money going toward the daughter's tuition requirements. It offends our notion of fairness that appellant now on appeal attempts to deny either his consent or his assumption of responsibility for the increased financial burden of his daughter's education.

Our standard of review is guided by firm principles. We will affirm the lower court absent a finding of insufficient evidence or abuse of discretion. *Commonwealth ex rel. Sosiak v. Sosiak,* 177 Pa.Super. 116, 111 A.2d 157 (1955). We find the appellant's own testimony was sufficient evidence for the lower court to decide to affirm the Master's recommendation on the first issue presented on appeal. We, therefore, find no abuse of discretion, and uphold the decision of the lower court.

The law of child support in this Commonwealth, as our Supreme Court has noted, is clear in its fundamentals. However, "[w]hile there is no shortage of case law announcing these principles, there is a total lack of organization with respect to how these principles interact...." *Melzer v. Witsberger,* 505 Pa. 462, 468, 480 A.2d 991, 994 (1984). Nonetheless, we begin our analysis of appellant's second issue with a review of applicable caselaw.

A father has the responsibility to support his children, *Hecht v. Hecht,* 189 Pa.Super. 276, 150 A.2d 139 (1959), to the best of his ability, *Commonwealth v. Cleary,* 95 Pa.Super. 592 (1929). His ability to give support is determined by examination of his property, his income, his earning capacity and the station in life of the parties. *Commonwealth ex rel Firestone v. Firestone,* 158 Pa.Super. 579, 45 A.2d 923 (1946). The obligation of the father is to make personal

sacrifices to furnish the children with their basic needs; however, the order should not be unfair or confiscatory. The purpose of a support order is the welfare of the children and not the punishment of the father. *Commonwealth ex rel. Shumelman v. Shumelman*, 209 Pa.Super. 87, 223 A.2d 897 (1966). Support orders which represent a contribution of more than one-half of the proven earnings of a parent in some cases are unreasonable. *Warner v. Warner*, 194 Pa.Super. 496, 168 A.2d 755 (1961).

In the case before us there is no allegation that either the Master or the lower court intended to punish the appellant. The child's disability is such that special education is clearly in her best interest; special children may demand of their parents special sacrifices. Moreover, appellant was not asked to contribute half of his alleged income of $11,000, and was asked to contribute less than one-half of his daughter's demonstrated need. He was being asked for the arrearages of $1,045 plus $4,225 for tuition, or a total of $5,270. Appellee, her second spouse, and family have been contributing the greater portion of Darrah's expenses, and had been contributing all of Darrah's expenses during the arrearage period of appellant.

Finally, this Court does not have to accept that the $11,000 alleged income constitutes the total funds that are available to appellant. This Court previously has held that a trial court may look beyond the actual earnings of a father in determining his support obligation to his children. *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa.Super. 247, 311 A.2d 701 (1973). Courts may look to a parent's earning power, especially where there is a question of bad faith, i.e., hiding assets or deliberately choosing a lower paying job in order to escape support responsibility. *Ransome v. Ransome*, 65 D. & C.2d 197 (1973). "In a support proceeding, the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits." *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa.Super. 66, 67, 297 A.2d 158, 159 (1972).

In this case, the Master found appellant's testimony to be less than credible. In particular, appellant's ability to obtain an unsecured loan for household improvements amounting to $15,000 was not consistent with the diminished earning capacity appellant claims is the horticulturist's lot in life. We find, given the Master's first hand impression, and given the existence of evidence to support the Master's incredulity, the trial court acted properly to uphold the Master's finding that "appellant is able to obtain funds over and beyond the earnings and Unemployment Compensation." (R. at 84a).

Appellant next contends that the court erred in not taking into sufficient account appellee's earning capacity. Appellant contends that to ignore appellee's earning power while examining his own is a violation of the state constitutional provisions of the Equal Rights Amendment.

> Support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. Both must be required to discharge the obligation in accordance with their capacity and ability. Thus, when we consider the order to be assessed against the father, we must not only consider his property, income and earning capacity but also what, if any, contribution the mother is in a position to provide.

*Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). He argues the Court should look to appellee's former salary level of $30,000.00 as the measure of her earning capacity. However, we have recognized that the child care contributions of an unemployed, nurturing parent are important, and have stated that an unemployed, nurturing parent should not be expected to find employment to advance a child's economic welfare at the expense of the child's emotional welfare. *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977).

> "... Of course, a court is not strictly bound by the nurturing parent's assertion that the best interest of the child is served by the parent's presence in the home.... But the court must balance several factors before it can

expect the nurturing parent to seek employment. Among those factors are the age and maturity of the child; the availability and adequacy of others who might assist the custodian-parent; the adequacy of available financial resources if the custodian-parent does remain in the home. *We underscore that, while not dispositive, the custodian-parent's perception that the welfare of the child is served by having a parent at home is to be accorded significant weight in the court's calculation of its support order.* (Emphasis added).

*Wasiolek, supra,* 251 Pa.Superior Ct. at 113–114, 380 A.2d at 402–3; *see Bender v. Bender,* 297 Pa.Super. 461, 444 A.2d 124 (1982).

Applying the *Wasiolek* factors to the facts of this case, we find that appellee's daughter by present husband was very young (only 3½ years old). Secondly, we find that appellee perceived that the welfare of this child would not be served by babysitters and day care facilities; appellee believed that Darrah's problems were the direct result of inadequate day care situations while she was employed. Appellee's perception that she was needed at home to spot the onset of potential emotional difficulties involving her infant daughter is accorded significant weight, especially in light of the emotional problem her elder daughter Darrah did, in fact, develop. Just as we cannot force a parent to choose between a child's economic and emotional welfare, *see, Wasiolek, supra,* we cannot force a custodial parent to choose between the economic welfare of one child, in this case Darrah, and the emotional welfare of another, her second child.

The third factor to be examined is the "adequacy of available financial resources if the custodian-parent does remain in the home." Appellant contends that the Master and trial court erred in failing to obtain evidence of appellee spouse's contributions to their household, citing *Shank v. Shank,* 298 Pa.Super. 459, 444 A.2d 1274 (1982). Since *Commonwealth ex rel. Travitzky v. Travitzky,* 120 Pa.Su-

per. 435, 440, 326 A.2d 883, 885 (1974), we have recognized
that:

> [I]f the second wife [is] gainfully employed and if her
> earnings or a portion thereof [are] contribut[ing] to the
> family budget, such facts would be relevant in determin-
> ing the father's ability to pay for his minor children.

Moreover,

> Where the record demonstrates that the lower court has
> failed to consider all factors relevant to the award of
> support, we will remand for a full evidentiary hearing.
> *Pawol v. Pawol,* [293] Pa.Super. [29], 437 A.2d 974 (1981).

We find ample indication that the Master considered evi-
dence of the contributions of both parties' new spouses.
The Master was obviously aware of the relevance of such
testimony:

BY ATTORNEY COMETA:

> At this point, Mr. Master, Mrs. Gray is remarried; her
> husband is a chiropractor. Mr. Stredny is remarried and
> whatever income his present wife may have is irrelevant
> in basing a support decision.

BY THE MASTER:

> That's true, but [I]'m sure you're well aware that it is
> taken into consideration as to the circumstances at home
> and as to whether or not the wife does make any contri-
> butions to the home situation and so forth. There's a big
> difference between a wife who has no income whatsoever
> and a wife who does—insofar as the home expenses
> themselves go. It is true that any income of the wife has
> no part of the support hearing and certainly his present
> wife is not responsible for any of the support for his
> daughter. But the questions of her support, the support
> of her daughter and any contribution to their home life,
> they are relevant. (R. at 64a).

In addition, the Master had heard testimony that appellee's
family, including her present husband, mother and mother-
in-law, were contributing directly to Darrah's educational
expenditures, despite the fact that they were under no legal

obligation to do so (R. at 14a, Master's Report at 75a). As stated, *supra,* Darrah's pretuition expenses were $6344. (R. at 31a). Appellant's support payments of $40.00 or $15.00 weekly totalled $1245.00 annually. (R. at 28a). Appellant was obligated to pay only $1245.00 of his alleged annual income of $11,000.00 while the appellee was contributing the remaining $5099.00 of Darrah's expenses out of her $7,000.00 annual income. Moreover, appellant only paid during this period $200.00 of his obligatory $1245.00, so his arrearages amounted to $1045.00. When Darrah's tuition payment of $8,500.00 is added into these calculations, appellee was paying $13,599.00 plus the arrearage amount of $1045.00 for a total of $14,644.00 in the year 1983. Approximately $6554.00, over and beyond appellee's $7,000.00 income, was being contributed to Darrah's support by members of appellee's family. In other words, appellant had paid only $200.00 while appellee and her family paid $14,-644.00. Thus appellee's spouse, out of necessity, has been contributing directly to appellee's child in addition to supporting the ordinary operating expenses of his own household. We believe that this was sufficient evidence for the Master to utilize in reaching his decision, and thus distinguish this case from *Shank, supra,* wherein the record was devoid of *any* evidence regarding a second spouse's contributions toward defraying household expenses.

Finally, we are also mindful that:

> A parent of minor children who works in the home caring for children should be viewed as employed although he or she usually receives no pay check at the end of the week.

*Butler v. Butler,* 339 Pa.Super. 312, 319, 488 A.2d 1141, 1142 (1985).

However, this appellee did engage in part-time financial activity, earning approximately $7,000.00 annually. This activity was in addition to her role as primary caretaker for her younger daughter. Of that $7,000.00 income, we realize appellee had to contribute *all* of it to Darrah's tuition, living expenses, health and life insurance since the appellant was in arrears with the support payments he was obligated to

contribute under the pre-existing support order. This mother has made special sacrifice for this special child. For all the foregoing reasons we are compelled to affirm the lower court in rejecting appellant's assertion that appellee's earning power was not accorded sufficient weight in the Master's determination of support payments.

We further agree with the lower court that the Master found sufficient evidence of appellant's ability to access funds beyond those he claimed as income. We agree that appellee's decision to remain at home with her second daughter was appropriate and that the trial court properly considered the total resources available to support the parties' child. The trial court committed no abuse of discretion by ordering appellant to pay one-half of his daughter's school tuition. Accordingly, we affirm the Order of the court below.

ROWLEY and MONTEMURO, JJ., concur in the result.