545 A.2d 326

**Carl Bruce FUNK, Appellant,**

v.

**Margaret Louise FUNK, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1988.

Filed July 6, 1988.

Kenneth J. Sparler, York, for appellant.

William C. Gierasch, Jr., York, for appellee.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from a child support order entered by the York County Court of Common Pleas. The appellant alleges that the lower court abused its discretion when determining the amount of support to be paid. Specifically, Mr. Funk questions: 1) Whether the court erred by failing to comply with the support guidelines enunciated in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984) and codified in 23 Pa.C.S.A. § 4322; and 2) Whether the court erred by failing to consider the earning capacity of the mother and the child care expenses of the father when determining the support award. Additionally, the appellant alleges that the court erred by requiring him to pay child support arrearages for the period when the appellee removed the children from Pennsylvania. After reviewing the record and the parties' brief, we vacate the support order in part, remand the case for additional evidentiary hearings prior to final adjudication of the parties' support obligations, and we affirm that portion of the support order which directs the appellant to pay the arrearages.

The record reveals that C. Bruce Funk and Margaret L. Funk were married on September 8, 1977. Two children were born during their marriage: Jessica Funk, born May 26, 1980, and Kevin Funk, born September 4, 1982. The parties to this action are now divorced, although issues pertaining to the divorce are currently pending.

When the couple first separated in 1986, Mrs. Funk was temporarily awarded primary physical custody of her children. On July 28, 1986, a temporary child support order was entered directing Mr. Funk to remit $134.00 per week for the support of his children. Mr. Funk made regular child support payments until September 4, 1986, when Mrs. Funk, in violation of the temporary custody order, removed the parties' two children from the court's jurisdiction without notifying the appellant, the York County Domestic

Relations Office or her attorney of her and the children's whereabouts. During the period in which the children's whereabouts were concealed, Mr. Funk discontinued payment of the child support. Six weeks later, Mrs. Funk returned to York County with the children, and, on October 17, 1986, a contempt/custody proceeding was held. The appellee was found in contempt and was given a suspended sentence of ninety (90) days in jail. In addition, the court entered a new temporary custody order awarding Mr. Funk primary physical custody of his children. On October 28, 1986, the court suspended Mr. Funk's obligation to make support payments since physical custody of his children had been transferred to him.

On May 5, 1987, a consent order was entered by the York County Court of Common Pleas establishing joint physical custody of the children. Pursuant to the custody order, a schedule has been implemented whereby each party enjoys physical custody of the children approximately seven (7) days out of a fourteen (14) day period.[1]

On August 5, 1987, the support hearing was held, and an order was entered directing that: 1) Mr. Funk pay to Mrs. Funk arrearages of $135.00 per week for the period when Mrs. Funk had left the jurisdiction with her children; 2) Mr. Funk was not obligated to pay child support during the period he was the children's primary physical custodian; and 3) During the period of joint physical custody, *i.e.*, from

---

1. The basic custody schedule was stipulated by the parties and was explained in the agreed joint custody order as follows:

   The parties shall have physical custody of the children on alternate weekends from 6:00 p.m. on Friday to 8:30 a.m. on Monday. The father shall have physical custody of the children on Monday and Tuesday and the mother shall have custody on Wednesday and Thursday. Mother's custody of Kevin will begin at 12:00 noon on Wednesday and end on Friday at a time to be specified by the joint custody counselor described in paragraph 4. Mother's custody of Jessica will begin at 3:30 p.m. on Wednesday and end at 8:30 a.m. on Friday. On those occasions when mother's weekday custody is followed by weekend custody, she shall retain custody of the children for this entire period without interruption. When father's weekday custody is preceded by weekend custody, he shall likewise have custody of the children for the entire period without interruption.

May 5, 1987, until the present, Mr. Funk must remit $95.00 per week to Mrs. Funk for child support until further order. Mr. Funk appeals from the August 5, 1987, court order.

Instantly, the appellant alleges that the lower court abused its discretion when determining the amount of his support obligation. After careful consideration, we agree with the appellant. When reviewing the lower court's decision, our duty is to insure that the lower court's support order is fair, not confiscatory, allows for the parents' reasonable living expenses, and is consistent with the parents' and children's "station in life" and "customary standard of living." *Bower v. Hoover*, 370 Pa.Super. 321, 536 A.2d 426, 427 (1988); *Fee v. Fee*, 344 Pa.Super. 276, 496 A.2d 793, 796 (1985); *Shindel v. Leedom*, 350 Pa.Super. 274, 504 A.2d 353, 356 (1986); *Com. ex rel. Loring v. Loring*, 339 Pa.Super. 92, 488 A.2d 324, 325 (1985). Additionally, we are mindful that the lower court's paramount concern while making support determinations should be the protection of the best interest of the children. *Michael v. Michael*, 360 Pa.Super. 312, 520 A.2d 473, 475 (1987), allocatur denied, 515 Pa. 623, 531 A.2d 431; *Gerber v. Gerber*, 337 Pa.Super. 580, 487 A.2d 413, 414 (1985). In *Fee*, 496 A.2d 793, Judge Beck restated the standard of review applicable in child support cases:

On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award. *Commonwealth ex rel. Robinson v. Robinson*, 318 Pa.Super. 424, 465 A.2d 27 (1983); *Downie v. Downie*, 314 Pa.Super. 548, 461 A.2d 293 (1983). An abuse of discretion is not " 'merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused.' " *Boni v. Boni*, 302 Pa.Super. 102, 109, 448 A.2d 547, 550 (1982) (citations omitted); *Commonwealth ex rel. Darling v. Darling*, 300 Pa.Super. 62, 445 A.2d 1299 (1982)

*Fee,* 496 A.2d at 794. *See also Marshall v. Ross,* 373 Pa.Super. 235, 540 A.2d 954 (1988); *Bower,* 536 A.2d at 427; *Palmatier v. MacCartney,* 365 Pa.Super. 300, 529 A.2d 518, 519–520 (1987); *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871, 878 (1987).

With these standards in mind, we begin our analysis of the appellant's contention that the lower court erred by failing to follow the child support determination guidelines established by our Supreme Court in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984), and codified in 23 Pa.C. S.A. § 4322.[2] In *Melzer, supra,* our Supreme Court set fourth uniform guidelines for the calculation of child support. It held that, in making such calculations, the hearing court must determine and state on-the-record: "1) reasonable needs of the children which reflect the needs, customs and financial status of the parents; 2) respective abilities of the parents to provide support which are identified in part by reasonable living expenses; 3) use a formula to calculate each parent's total support obligation; and 4) credit for support provided directly to the children." *DeMasi,* 530 A.2d at 877 summarizing *Melzer,* 480 A.2d 991. *See also Ryan v. DeLong,* 371 Pa.Super. 248, 538 A.2d 1 (1987); *Bower,* 536 A.2d at 427; *Michael,* 520 A.2d at 475; *Riess v. De Luca,* 353 Pa.Super. 622, 510 A.2d 1239, 1240–41 (1986).

We recognize that the child rearing expenses in a shared custody setting vary from those in the sole custody setting, and, consequently, the formula for shared custody support determinations will not be identical to that envisioned in

**2.** 23 Pa.C.S.A. § 4322. Support Guidelines reads as follows:

The courts of common pleas shall develop guidelines for child and spousal support so that persons similarly situated shall be treated similarly. The guidelines shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net income and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

18, Oct. 30, P.L. 264, No. 66, 1, effective in 90 days.

*Melzer, supra.* Obviously, the lower court should consider those variations in child care expenses unique to the shared custody situation when determining child support. See *Bower,* 536 A.2d at 428; *Fee,* 496 A.2d at 795, 796 n. 5. However, contrary to the appellee's contention that *Melzer* type formulas are "inapplicable to determine support in shared custody situations" (Appellee Brief p. 9), we firmly believe that the lower court must make flexible application of a *Melzer* type formula allowing for those anomalies inherent in shared custody arrangements, *e.g.* the duplication of reasonable child care expenses.

■ Instantly, the appellant is correct that the record is void of any indication that the lower court applied a formula or framework to assist in its adjudication of the support petition. In fact, we find that the lower court's analysis with respect to the parties support obligations is wholly insufficient. The central issue in a support adjudication is the "children's reasonable living expenses," and the lower court's determination of the children's living expenses does not appear on the record. Clearly, the lower court cannot fully protect the best interest of the children without first determining their reasonable needs. Further, the lower court failed to calculate on-the-record the appellant's reasonable living expenses which is also of primary importance in a child support proceeding. We find that the lower court abused its discretion when it failed to follow the mandate of *Melzer, supra,* and inadequately explained on-the-record the reasons for its decision. Moreover, in *Ryan, supra,* and *Marshall, supra,* we expressly stated that: "To insure that an actual dollar figure is determined as to the reasonable needs and expenses of the parents and children, *the calculated Melzer formula must be in the record.* (emphasis added)." 538 A.2d at 4; *Marshall,* 540 A.2d at 956.

■ Next, the appellant alleges that the lower court erred when it failed to consider the appellee's earning capacity and his child care expenses. Again, we agree with the appellant. Both parents are equally responsible for supporting their children, and the extent of their individual

support obligations is determined by their respective capacities to earn and abilities to pay. *Bower,* 536 A.2d at 427; *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508, 510 (1987); *DeMasi,* 530 A.2d at 877; *Fee,* 496 A.2d at 796; *Shindel,* 504 A.2d at 356. A parent's ability to pay is determined by analyzing his or her actual and potential cash flow from financial resources, property interests, other investments and *earning capacity. DeWalt,* 529 A.2d at 510; *DeMasi,* 530 A.2d at 878–879; *Shindel,* 504 A.2d at 356. All direct and indirect income, from whatever source, is to be evaluated when determining a party's support obligation. *Shindel,* 504 A.2d at 356; *Fee,* 496 A.2d at 796 n. 6. Finally, "[t]here is no presumption that the father, solely because of his sex and without regard to the actual circumstances of the parties, must accept the principal burden of financial support for the children. *See Conway v. Dana,* [456 Pa. 536] at 539, 318 A.2d [324] at 326 [1974]." *Bower,* 536 A.2d at 427.

Instantly, the lower court, commenting on the mother's earning capacity, stated:

There was no evidence submitted to warrant the assignment of an earning capacity to the Wife and it is clear from the evidence that she did not have a job and her only prior experience was in a part-time capacity.

If the Court were to assign an earning capacity, it would not exceed a minimum wage rate or be in excess of the $430 per month that was awarded to her as Alimony Pendente Lite. (Memorandum Op. p. 4–5)

A cursory review of the record clearly indicates that the lower court completely disregarded that evidence which pertained to the mother's income and earning capacity. In a prior action for spousal support, the same lower court adopted the Master's Report and Recommendation on the Issues of Alimony Pendente Lite, Interim Counsel Fees, Costs and Expenses and awarded the mother $430.00 per month in Alimony Pendente Lite. Presently, the lower court reiterated that decision in the order before us. However, the lower court, in awarding child support, inexplica-

bly ignored the Master's prior finding that the appellee had an earning capacity of $640.00 per month (32 hours per week $ $5.00 per hour). The court also ignored the appellee's prior testimony that she has an earning capacity of $5.00 per hour. Additionally, the lower court recognized that the appellee received monthly financial assistance from her parents but then erroneously refused to consider that aid as part of the appellee's income.[3]

■ We are cognizant of the fact that the wife has not worked extensively outside the home. However, the appellant is a 1975 graduate of Duke University with a degree in Psychology. Obviously, the appellee has a greater earning capacity than "minimum wage" or "the $430 per month that was awarded to her as Alimony Pendente Lite." Since both parents share equally in the responsibility of child support according to their respective abilities, we find the lower court erred when it failed to assign the appellee an earning capacity and support obligation consistent with the evidence presented. See *Bower*, 536 A.2d 426, 427 (order obligating father to assume responsibility for greater share of child support is abuse of discretion when both parents are equally able to support their child.)

■ Further, we find that the lower court erred when it refused to allow the appellant to claim his children's daycare expenses as "support provided directly to the children" or as a portion of his reasonable living expenses. See *Loring*, 488 A.2d at 326 (trial court's disregard for parent's reasonable living expenses constitutes an abuse of discretion); *DeMasi*, 530 A.2d at 877; *Riess*, 510 A.2d at 1240–1241. The appellant desires to place his children in a day

**3.** This case is distinguishable from *Fichthorn v. Fichthorn*, 368 Pa.Super. 305, 533 A.2d 1388 (1987). In *Fichthorn, supra,* the mother received aid from her father-in-law in the form of "loans", and we found no abuse of discretion by the trial court when it refused to consider the "loans" as income. However, instantly, the testimony regarding the financial assistance that the appellee receives from her parents was insufficient for the court to determine the aid was in the form of "loans." Thus, the lower court abused its discretion in not considering the funds as income or at least determining the fund's true nature.

care facility on the days which he has custody of the children and must work. However, the lower court did not believe this to be a reasonable expenditure and stated:

... [T]he mother is presently unemployed and has offered to take care of the children during that period of time. This arrangement is unacceptable to the father; however, from an economic standpoint, it would seem to make a great deal of sense if that were to be done as it would provide more money for both families and there is apparently no testimony at this particular time as to what adverse affect that might have on the children. (Order p. 2)

Curiously, the lower court's decision seems to be an effort to adopt the "nurturing parent doctrine" in this shared custody situation. In *Com. ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977), we applied the reasoning of the nurturing parent doctrine and determined that a custodial parent who stays at home and cares for a child does, in fact, support that child. The nurturing parent's services are valuable to the child and the non-custodial parent. Commenting on the "nurturing parent doctrine," we stated that:

... Of course, a court is not strictly bound by the nurturing parent's assertion that the best interest of the child is served by the parent's presence in the home.... But the court must balance several factors before it can expect the nurturing parent to seek employment. Among these factors are the age and maturity of the child; the availability and adequacy of others who might assist the custodian-parent; the adequacy of available financial resources if the custodian-parent does remain at home. We underscore that, while not dispositive, the custodian-parent's perception that the welfare of the child is best served by having a parent at home is to be accorded great weight in the court's calculation of its support order.

*Wasiolek,* 380 A.2d at 402–403. *See also Bender v. Bender,* 297 Pa.Super. 461, 444 A.2d 124, 126 (1982); *Stredny v. Gray,* 353 Pa.Super. 376, 510 A.2d 359, 363 (1986).

Instantly, the record does not reflect that the lower court used a *Wasiolek* analysis prior to refusing to allow the appellant to claim reasonable day care expenses and suggesting that the appellee remain at home to care for the children. The children subject to this order are old enough to attend elementary school. Thus, except during the children's summer vacation, the mother would care for the children only several hours per day before the father left work and resumed custody. The appellant, who is also a custodial parent, wants the children to attend a respected day-care facility after school. Certainly, the trial court's discretion is not so broad as to allow the court to deny arbitrarily the custodial father's reasonable wishes regarding child care.

In addition, contrary to the court's opinion, allowing the appellee to care for the children "full-time" would not necessarily provide more money to both families since the appellee would be unable to work except on alternating weekends.[4] Consequently, the effect of the order is all but to eliminate the appellee's opportunities to earn income and increase her earning capacity. We believe that, if the appellee does pursue a career, it is entirely probable that all concerned will achieve a higher standard of living.

Moreover, the lower court cannot, through its support order, implement a *de facto* change in the parties' custody order. In effect, the lower court, because the appellant is gainfully employed, has ordered him to choose between two options he finds objectionable, either continue to pay the day-care costs without credit or allow an increase in the appellee's custody rights without an actual custody proceeding. Consequently, we find that the lower court clearly abused its discretion when it refused to allow the appellant

4. The Master's findings from the prior Alimony Pendente Lite determination suggested that the appellee would work an average of four days per week, eight hours per day. The Master noted that, under the existing custody agreement, the appellee would have to work one day per week when she had physical custody of the children. If the appellee was to care for the children every weekday, as proposed by the instant order, she would only be available to work on the alternating weekends that the appellant has custody of the children.

to claim child day-care costs as support given directly to his children or as a portion of his reasonable living expenses. See *Marshall*, 540 A.2d at 956 (trial court must consider expenses incurred by appellant in providing for child currently residing with him); *Bower*, 536 A.2d at 427 (father's sex cannot be weighed against him); *Murphey v. Hatala*, 350 Pa.Super. 433, 504 A.2d 917, 924 (1986), allocatur denied 516 Pa. 634, 533 A.2d 93 (1987) (parent's employment cannot be a factor weighed against him in a custody proceeding); *Loring*, 488 A.2d at 326 (reasonable living expenses must be allowed unless excessive or assumed to avoid child support).

Finally, we summarize our decision by stating that the court erred when awarding support by failing to follow the mandates of *Melzer, supra,* and failing to consider all factors relevant to an award of support. In *Stredny, supra,* we stated that "[w]here the record demonstrates that the lower court has failed to consider all factors relevant to the award of support, we will remand for a full evidentiary hearing." *Stredny*, 510 A.2d at 364, citing *Pawol v. Pawol*, 293 Pa.Super. 29, 437 A.2d 974 (1981). Accordingly, we remand for a full evidentiary hearing in pursuant to the provisions of this opinion.

Next the appellant alleges that the court erred in ordering him to remit to the appellee child support arrearages of $134.00 per week for the period in which Mrs. Funk removed the children from the jurisdiction in violation of court order. We find no error in the court's decision.

■ The law in Pennsylvania is well established that "[t]he right of a young child to support from its father 'is well nigh absolute.'" *Com. v. Mexal*, 201 Pa.Super. 457, 193 A.2d 680, 682 (1963); *Com. ex rel. Firestone v. Firestone*, 158 Pa.Super. 579, 45 A.2d 923 (1946); *Kramer v. Kelly*, 265 Pa.Super. 58, 401 A.2d 799, 803 (1979); *Com. ex rel. Zercher v. Bankert*, 266 Pa.Super. 595, 405 A.2d 1266, 1269 (1979). In *Mexal, supra,* we stated:

The duty to support children is not dependent upon custody of them. Even assuming that the mother im-

properly removed the children from the defendant's home to another state, her misconduct in doing so cannot destroy the right of those children to support from their father. (citation omitted).

*Mexal,* 193 A.2d at 682.

An exception to the *Mexal* rule sufficient to relieve a father of his duty to pay child support occurs only when the evidence demonstrates that the mother has acted in an extremely improvident manner, well in excess of mere misconduct. *See Com. ex rel. Chila v. Chila,* 226 Pa.Super. 336, 313 A.2d 339 (1973); *Zercher,* 405 A.2d at 1269, explaining *Chila, supra,* and *Com. ex rel. Shaffer v. Shaffer,* 90 York Legal Record 130 (1976), affirmed *per curiam* 247 Pa.Super. 618, 373 A.2d 1142 (1977); *Kramer,* 401 A.2d at 803–804, distinguishing *Chila, supra.*

The circumstances in *Kramer v. Kelly, supra,* are almost identical to those currently before us. Therein, the mother removed her child from the court's jurisdiction without informing the court or the father of her and the child's whereabouts. Six months later, with the aid of a private investigator, the father was able to locate his child. During the period of the child's concealment, the father withheld the child support payments. Subsequently, we affirmed the lower court's order directing the father to pay the child support arrearages and stated:

> It is an accepted principle that the misconduct of the mother does not affect a father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court. (citations omitted).

*Kramer,* 401 A.2d at 803.

Likewise we are not persuaded by the appellant that he is not obligated to pay the child support payments for the period the children were taken from the jurisdiction. While Mrs. Funk was held in contempt, we do not believe that her misconduct rose to the level of "extreme improvidence." Consequently, we hold that the appellant must pay the

arrearages and reiterate that "[a]bsent the extreme circumstances present in *Chila,* we are loath to deprive the child of support payments because of the improvident actions of the mother." *Kramer,* 401 A.2d at 804.

In conclusion, we find that the lower court erred when determining the parties' support obligations. The lower court failed to apply a child support formula and failed to explain adequately on the record the reasons for its allocation of parental support obligations. Further, the court erred when it did not determine the appellee's earning capacity and when it refused to allow the appellant's reasonable child day-care expenses. Consequently, we vacate that portion of the order which establishes the parties' support obligation and remand for additional proceedings in accordance with the provisions of this opinion. However, we affirm that portion of the order which directs the appellant to pay the child support arrearages.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I join in the opinion of the court and write separately only to comment upon that part of it which sets forth the standard of review for determining whether an abuse of discretion has occurred.

The majority acting with ample precedent, cites this court's decision in *Fee v. Fee,* 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985), which in turn cites *Boni v. Boni,* 302 Pa.Super. 102, 109, 448 A.2d 547, 550 (1982), for the proposition that "[a]n abuse of discretion is not 'merely an error of judgment.'" The problem is that "not merely an error of judgment" may be read to practically foreclose appellate review. I take the phrase to mean that although the reviewing court might exercise its judgment in a different manner, if the record supports the judgment of the trial court, the appellate court must leave the judgment undisturbed. However, the oft repeated maxim is too easily recast and can take on what I believe to be an unintended meaning. See *Straub v. Tyahla,* 274 Pa.Super. 411, 414,

418 A.2d 472, 474 (1980) ("an abuse of discretion is merely an error of judgment"). So fortified, an abuse of discretion standard becomes one in which a reviewing court must tolerate what it concludes to be a finding of error of judgment. While it is true that in applying the abuse of discretion standard on appeal the reviewing court must view the lower court's exercise of judgment in a less critical and more reluctant manner than ordinarily, it would not seem to admit of countenancing a decision which makes an error of judgment particularly in a matter such as the present which involves support of children.