J-S05007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.R.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| D.W.F., | |
| Appellant | No. 1310 MDA 2016 |

Appeal from the Order Entered July 26, 2016
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): 11-20575
PACSES No. 252112708

BEFORE:  BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 28, 2017**

D.W.F. (Father) appeals from the order of July 26, 2016, that overruled his exceptions to the January 8, 2016 order that set his earning capacity for child support purposes at $25.59 per hour in the context of Father's fifth petition seeking modification of the amount he pays to L.R.F. (Mother) for the support of their two children.  We affirm.

The parties married in May of 1998 and separated in January of 2010. They are the parents of two minor children:  G.F. (born in March of 2000) and S.F. (born in May of 2003), both of whom are in Mother's primary custody.  A bifurcated divorce was entered on November 17, 2014, but the

_____

[*] Retired Senior Judge assigned to the Superior Court.

economic claims remain pending. The trial court provided the following, extensive factual and procedural history of this matter, stating:

> This child support saga began when [Mother] filed a divorce complaint on April 29, 2011, followed by a praecipe for a hearing on her request for alimony pendente lite, on May 5, 2011. A hearing was held July 21, 2011, but because [Father] (who at that time owned and operated his own business, Automatic Sprinkler Supply, Inc.) did not provide sufficient documentation (the most recent tax return available was that for 2008), an interim order was entered based on [Father's] paystub (he paid himself a wage) and the matter was rescheduled. [Mother] then filed a complaint for spousal support and, after leaving the marital residence, a complaint for child support. Further hearing was held October 17, 2011, but [Father] still did not provide the documentation "necessary to validate his alleged income from his business." A third hearing was held December 7, 2011, at which [Father] attempted to present a picture of his business as being "so financially strapped that he is unable to take even his paycheck from it." This attempt was rejected by the hearing officer based on [Father's] testimony respecting continued business expenses being incurred, certain "loan repayments" being made by the business to [Father], and [Father's] prior practice of using the loan repayments to lower his W-2 income for purposes of college financial aid applications. The hearing officer found [Father's] testimony lacking in credibility and instead used [Father's] 2010 W-2 to set his support obligation, in an Order dated December 14, 2011.
>
> On February 22, 2012, [Father] petitioned for modification, indicating that his business had significantly decreased. After a hearing on May 1, 2012, however, the hearing officer found that [Father] had presented nothing significantly different than what he had presented in December 2011, again found him lacking in credibility, and continued the support based on his 2010 W-2. Exceptions to the hearing officer's order were denied.
>
> On April 18, 2013, [Father] again petitioned for modification, again alleging that his income had decreased. He presented a 2012 personal income tax return which showed he had a gross income of $46,453.00,[1] but presented no financial information for the business, no bank account statements and no

credit card statements, even though these documents had been requested. The hearing officer found that the tax return was not credible, based on other information from which she concluded that [Father] had falsified his 2011 tax return, and the lack of supporting documentation. By Order dated July 3, 2013, the support was continued based on the 2010 W-2.

[1]The 2010 W-2 showed a gross income of $80,787.22.

[Father's] May 20, 2014 petition for modification again alleged that his income had decreased. At the hearing on that petition, held July 14, 2014, following [Father's] testimony that his business was failing, that he had no money, that he had moved into the business property (from the foreclosed-upon marital residence), that he had lost all of his employees and that most of his customers now used the services of a former employee, considering that [Father] had produced no financial documents, general ledgers or business tax returns and had testified that he was not looking for work, the hearing officer found that he was intentionally limiting his income because of the divorce litigation. By Order dated August 1, 2014, the support was continued based on the 2010 W-2. Exceptions to that Order were later withdrawn, as the parties agreed to continue the Order in effect.

[Father's] December 17, 2014, petition for modification took a different tactic. Rather than asserting reduced business income, [Father] alleged that he had a new job, earning $15.25 per hour, less than the earning capacity previously set. In an Order dated March 18, 2015, [Father] was found to be working for his pastor through a business owned by his pastor, which business was in direct competition with [Father's] previous business, and was begun three weeks after the pastor had begun working for [Father], prior to the change in roles. The hearing officer again found that [Father] had intentionally reduced his income and had made no effort to mitigate that reduction, but agreed to review the support because it had been more than three years since the earning capacity had been set and in this Commonwealth, "a child support litigant is entitled to a review of his or her case every three years whether or not the litigant is alleging a material and substantial change in circumstances." The hearing officer then set an earning capacity based on a finding that [Father] had the following job skills: installation, repair and inspection of sprinkler systems, managing a business,

hiring and firing employees, creating and executing business plans, scheduling work, providing estimates, engaging in contract negotiations, issuing invoices, keeping track of receivables, maintaining an inventory and paying bills. A capacity of $25 per hour was assessed. Since there was no explanation as to the source of this figure, however, in response to exceptions, although upholding the hearing officer's assessment of an earning capacity based on [Father's] job skills, the court remanded the matter for further hearing, the purpose of which was to hear evidence of what those skills are worth in today's job market.

The most recent hearing in this matter was then held on December 7, 2015, at which [Mother] presented the testimony of a vocational evaluation expert, who opined that someone with [Father's] set of job skills could expect to earn $25.59 per hour. [Father] presented the testimony of a building inspector/senior plans examiner who earns $48,000 per year, and his own testimony, that he would not be able to work as a building inspector as he does not have the required certifications. The hearing officer found the testimony of the vocational evaluation expert more relevant, and assessed an earning capacity based on that expert's opinion. That decision was upheld on exceptions and [Father] has now appealed.

Trial Court Opinion (TCO), 8/29/16, at 1-3. Specifically, the July 26, 2016 order from which Father now appeals, confirmed that Father's earning capacity was $25.59 per hour. The July order also affirmed the January 8, 2016 order, which directed that the child support amount due was $908.49 per month plus $90.85 per month in arrears.[1]

---

[1] The January 8, 2016 order also provided that Father owed Mother $128.54 per month in alimony pendent lite plus $12.85 per month in arrears. However, because a final decree in divorce has not been entered, "we do not have jurisdiction to entertain an appeal from an order of spousal support…." *Portugal v. Portugal*, 798 A.2d 246, 255 (Pa. Super. 2002).

As a basis for its determination, the trial court explained in its opinion that:

> The gravamen of [Father's] complaints on appeal is that the earning capacity assessed to him is not consistent with his education, training, experience, health, earning history and availability of jobs. To the contrary, however, the vocational evaluation expert provided evidence of what a person earns if he works in the same field as has [Father] for over twenty years, and the capacity assessed is consistent with [Father's] earning history (he actually has earned significantly more in the past). As for availability of jobs, the evidence was more than sufficient to support a finding that the sprinkler business is still out there, but is simply being performed by the pastor's company rather than [Father's] company. The court believes [Father] intentionally transferred his customers to others, a former employee and his pastor, arranged to work for the pastor at $15.25 per hour, and then came into court seeking a reduction of his support obligation. The assessment at $25.59 per hour is actually significantly less than what the court believes [Father] would still be earning if he had not orchestrated the ruse.

TCO at 3-4.

Father filed a timely appeal and a concise statement of errors complained of on appeal. He now raises the following four issues for our review:

> [1.] Whether the trial court erred in assessing [Father] with a theoretical earning capacity in determining his obligation for child support[?]
>
> [2.] Whether the trial court erred in not assessing [Father] with a realistic, practical earning capacity consistent with his education, training, experience, health, earning history and availability of jobs in determining his obligation for child support[?]

- 5 -

[3.] Whether the trial court erred in assessing [Father] an earning capacity that went beyond the directive of the remand order in determining his obligation for child support[?]

[4.] Whether the trial court erred in adopting the report of the expert as the expert[']s valuation of capacity was not consistent with [Pa.R.C.P.] 1910.16[-]2(d)(4) in determining Father's obligation for child support[?]

Father's brief at 5.

Initially, we note that when reviewing a child support order, we are guided by the following well-settled standard:

> "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese*, 452 Pa. Super. 497, 682 A.2d 393, 395 (1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. *Id*. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. *Depp v. Holland*, 431 Pa. Super. 209, 636 A.2d 204, 205-06 (1994). *See also Funk v. Funk*, 376 Pa. Super. 76, 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp*, 636 A.2d at 206.

*McClain v. McClain*, 872 A.2d 856, 860 (Pa. Super. 2005) (quoting *Samii v. Samii*, 847 A.2d 691, 694 (Pa. Super. 2004)).

All four of Father's issues center on the earning capacity assigned to him by the trial court. Essentially, Father claims that Mother's vocational expert based an earning capacity determination on theoretical, not realistic, circumstances and that the expert did not consider the factors outlined in

Rule 1910.16-2(d)(4). Father further contends that the hearing officer exceeded the trial court's directive set forth in the remand order and failed to determine an earning capacity based on what Father's skills are worth in today's job market.

We begin addressing Father's claims of error by setting forth the language contained in Rule 1910.16-2(d)(4), which addresses earning capacity and states:

> (4) *Earning Capacity*. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

We also consider the following discussion in **Morgan v. Morgan**, 99 A.3d 554 (Pa. Super. 2014), which sheds light on the arguments raised in this appeal:

> There is no requirement in the Rule that the trial court must adjust the earning capacity to reflect the "[a]ge, education, training, health, work experience, earnings history and child care responsibilities" of the party to which the earning capacity is

being assigned; the Rule requires only that the trial court consider these factors. **See** Pa.R.C.P. 1910-16.2(d)(4). … "[T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses." **Krankowski v. O'Neil**, 928 A.2d 284, 287 (Pa. Super. 2007) (citation omitted). "A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq.*, or abused its discretion in applying these Rules." **Id**. at 286.

**Id.** at 558.

In concluding that Father's issues have no merit, we rely on the trial court's January 8, 2016 order that discussed the testimony provided at the December 7, 2015 hearing by Mother's vocational expert, Mitchell Schmidt.

Mitchell Schmidt … was established as an expert in the area of vocational evaluation and estimates of earning capacity. He provided his expert opinion that [Father] is capable of earning $25.59 per hour. He arrived at this opinion by examining the March 18, 2015 family court order, the transcript of the February 19, 2015 hearing and excerpts of the transcript from the February 26, 2015 hearing and then performing a vocational evaluation of available wage information from the Pennsylvania Department of Labor and Industry. He did not interview [Father]. Mr. Schmidt submitted a report dated November 15, 2015…. In that report, Mr. Schmidt details various occupations for which he believes [Father] is qualified and also lists wage data from the Williamsport, PA Metropolitan Statistical Area and the State College, PA Metropolitan Statistical Area. Specifically, he opine[d] that [Father's] skill set would best match the occupations of building inspector, pipefitter and control valve installer and repairer. He testified that this is his opinion because in the past [Father] has actually performed the tasks that one needs to perform in these three occupations. [Mr. Schmidt] concludes the average hourly wage for an individual with [Father's] skill set in the Williamsport, PA area is $21.87 and the average hourly wage for an individual with [Father's] skill set in the State College, PA area is $29.36. He then averages those together and conclude[d] that [Father] has an earning capacity of $25.59 per hour.

Trial Court Order (TC Order), 1/8/16, at 2-3 (footnotes omitted).

In that same order, the trial court discussed Father's testimony and the testimony of Ronald Decker, "a retired senior plans examiner/building codes official[,]" who was presented by Father. *Id.* at 3. Next, the trial court explained the basis for its decision, stating:

> Essentially, the parties have presented competing evidence. [Mother] contends that [Father] has an earning capacity consistent with the one found in the March, 2015 Family Court order and [Father] contends through the presentation of Mr. Decker's testimony that his earning capacity is somewhat lower. A finding is made that the testimony of Mitchell Schmidt is more relevant to this case. Mr. Decker testified to his knowledge as a state certified building inspector. His testimony focused on the multiple certifications possessed by one who inspects buildings for the state. [Father], on the other hand, testified that he has performed inspections of sprinkler systems for many years, that he continues to work as a sprinkler system inspector and that he is unaware that any certification for that work is necessary. [Father] has not ever worked as a building inspector certifying that a building meets or exceeds state codes requirements. This is the work discussed by Mr. Decker. Instead, [Father's] work history includes inspection of buildings for safety and to determine whether repairs and/or upgrades are needed. At the conclusion of his inspections he has never issued a certification that the inspected property passes state codes. Clearly, because [Father] has done this work for over twenty years, inspections of commercial buildings are done for reasons other than to obtain a certificate that the building passes state codes requirements.
>
> Mr. Schmidt's testimony evaluated not whether [Father] can issue Pennsylvania codes certifications to building owners but whether he possesses the knowledge and skill set necessary to hold employment in certain areas, specifically as a building inspector, a pipefitter, and as a control valve installer and repairer, the three occupations which Mr. Schmidt testified most closely mirror the skill set that [Father] has already been using

for more than twenty years in his business. Although he did not interview [Father], Mr. Schmidt was able to evaluate [Father's] own words regarding his past experience and his skill set by examining [Father's] testimony at the time of the hearing held on February 19 and February 25, 2015.

*Id.* at 4-5. The trial court then discussed the specifics as to the average earning capacity for someone working in these occupations in the geographic areas where Father has worked in the past. The court concluded that "it is appropriate to use the average of the Williamsport and State College wages about which Mr. Schmidt testified." *Id.* at 6. Thus, the court set Father's earning capacity at $25.59 per hour.

Our review of the record reveals that the trial court's findings and resulting conclusions are supported by the record. Moreover, as directed in the *Morgan* decision, the factors set forth in Rule 1910.16-2(d)(4) are to be considered and, as factfinder, the court is required to make credibility determinations with regard to the evidence presented. Simply stated, the court's reliance on Mr. Schmidt's testimony was not a theoretical exercise; rather, it was based on realistic circumstances that projected what Father's earning capacity would be with his past experience and the worth of those skills in the marketplace. The court did not abuse its discretion and, accordingly, we conclude that Father's issues are without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/2017