230 S.W.2d 177 (1950)
LUTKER
v.
LUTKER.
No. 27821.
St. Louis Court of Appeals. Missouri.
May 16, 1950.
*178 Abeken & Bergmann, Rodowe H. Abeken, of St. Louis, for appellant.
Milton F. Napier, of St. Louis, for respondent.
BENNICK, Commissioner.
This is an action for divorce which was brought by the wife, Evelyn A. Lutker, against her husband, Leo Lutker.
The parties were married on October 27, 1945, and continued to live together as husband and wife until August 14, 1948. One child was born of the marriage, a son, who was two and a half years of age at the time of the hearing in the court below, and is now about three and a half years of age.
In her petition plaintiff relied upon general indignities, and prayed that she be awarded the custody of the minor child with a reasonable allowance for its maintenance.
Admitting the marriage and the birth of the child, defendant's answer was otherwise a general denial.
The case was uncontested, the only testimony heard being that of plaintiff herself and her two character witnesses. Defendant was not present at the trial, but was represented by counsel who actively participated in the presentation of the case to the court.
At the conclusion of the evidence the court awarded plaintiff a decree of divorce with general custody of the minor child and with an allowance of $100 a month for the child's maintenance.
At the same time the court provided that defendant should have the temporary care and custody of the child each Wednesday evening from 5:00 to 9:00 p. m., and every other weekend from 9:00 a. m. Saturday to 9:00 p. m. Sunday, and for one month each summer upon two weeks' notice to plaintiff of which month was selected. Plaintiff was admonished by the court to take into consideration the fact that defendant's work takes him away from the City of St. Louis at frequent intervals, and both parties were cautioned to be guided by medical advice in respect to the care and custody of the child.
Dissatisfied with the portion of the decree relating to defendant's right of temporary custody of the child, plaintiff filed her motion for a new trial; and upon the same being overruled, she gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
The whole question on this appeal is whether, the circumstances considered, the court abused its discretion in making the provision it did for defendant's temporary custody of the child.
The parties appreciate that in cases of this character the personal welfare of the minor child itself is always the court's chief concern in all matters affecting its custody, and that regardless of what the divorced parents may desire as between themselves, their own wishes must yield if opposed to what the court conceives to be for the child's own best interests. Schumm v. Schumm, Mo.App., 223 S.W.2d 122; Perr v. Perr, Mo.App., 205 S.W.2d 909; Morgens v. Morgens, Mo.App., 164 S.W.2d 626.
As is perhaps true in most uncontested divorce cases, plaintiff's testimony was largely perfunctory, and went no farther in the proof of indignities than to establish a prima facie basis for the entry of a decree in her favor. It was then brought out that she and defendant had agreed upon a property settlement, and that under the terms of the agreement defendant was not to pay alimony but was to pay plaintiff the sum of $100 a month for the maintenance of the minor child. The court was advised by plaintiff's counsel that no written stipulation had been prepared, but that instead *179 the terms of the agreement were merely being dictated into the record.
So far as the custody of the minor child was concerned, it was apparently taken as an accepted fact that plaintiff should be awarded general custody, so that the only matter left in dispute was the question of defendant's visitation rights and privileges.
Asked by her counsel to state her own wishes in such respect, plaintiff replied that since the child was then only two and a half years of age, was on a schedule which called for a nap each afternoon, was dependent upon her for its toilet habits, and was inclined to be highly emotional, she did not feel that it should be taken away from her until it was old enough to care for itself. She indicated that she would have no objection to defendant visiting the child, but did not believe that he should be permitted to take the child to any place where it would be excited to any degree. Her physician had advised that the child should not be subjected to any unusual excitement, and she herself was carrying out the physician's instructions. While she made casual mention of one occasion when defendant had allegedly mistreated the child to such an extent as to cause it to sustain a nervous breakdown, neither court nor counsel seemed to take her statement very seriously.
Following the expression of plaintiff's views, the court then inquired of defendant's counsel regarding defendant's wishes in the matter.
Counsel answered that it was the belief of both himself and his client that the child's welfare would be best served by giving it the opportunity to be close to its father, and that the only way this could be successfully accomplished would be through their association with each other. Counsel then stated that defendant was residing with his mother, and that he had a married brother in the city; and that in order for the child to have the chance not only to know its father but also to become acquainted with its father's family, he recommended such a provision for defendant's temporary custody of the child as was subsequently written into the decree. He pointed out, however, that defendant was employed by the Fulton Iron Works in the highly specialized Diesel engine field, and that because of his technical knowledge, which was possessed by few other persons, he was subject to be sent out of the city on installation jobs on short notice. This would mean, so counsel said, that plaintiff and defendant, both of whom were represented as being people of fine character and superior intelligence, would have to take such situation into account and make whatever adjustments might be necessary as between themselves in respect to the exercise of defendant's visitation privileges.
The court then inquired whether the terms defendant's counsel had suggested would meet with plaintiff's approval, and again she and her counsel expressed some concern about any provision that would permit defendant to take the child away from its mother, and especially so for an entire month during the summer vacation period. In an endeavor to allay plaintiff's misgivings, counsel for defendant was emphatic in his assurance that defendant would take every precaution for the child's health and welfare during the time he had it in his custody, and that he would consult the child's regular physician and comply with every suggestion the physician might make. In fact it was clearly understood between court and counsel that the physician's advice would be not only sought but followed, particularly with respect to the advisability of causing the child to be separated from its mother for any extended period of time. Express mention was made that defendant should be permitted to take the child to the home of his mother with whom he was residing.
It is the settled rule that the findings of the trial court in matters involving the custody of a minor child of divorced parents, while not binding upon the appellate court which must review the record for itself, are nevertheless not to be lightly disturbed, and will be deferred to unless the appellate court is firmly convinced that the welfare of the child requires some other *180 disposition. Martin v. Martin, Mo.App., 160 S.W.2d 457; Salkey v. Salkey, Mo. App., 80 S.W.2d 735; Morgens v. Morgens, supra.
Plaintiff argues that there was no evidence to support the court's order, and that the provisions made for defendant's temporary custody of the child were so contrary to the child's best interests as to have amounted to an abuse of the court's discretion.
The evidence upon this feature of the case was unquestionably meager. As a matter of fact, the problem was largely presented in the form of a discussion between court and counsel, with plaintiff herself participating to some extent. In defendant's absence from the trial, his views were expressed by his counsel, who spoke in the capacity of an attorney of record in the case and under the sanctity of his oath as an officer of the court. Had he been misinformed about the facts and for that reason had made misstatements to the court, both plaintiff and her counsel were there to correct him. The parties were at liberty to make whatever showing they desired, and the whole situation would seem to have been explored to the satisfaction of the court, which had the responsibility of deciding what the terms of its order should be.
The record convinces us, as the trial court was likewise convinced, that both plaintiff and defendant are truly devoted to the child and equally sincere in their desire that nothing be done to jeopardize its welfare. Of course the natural difficulty is that their respective ideas as to what would or would not serve the child's best interests are influenced in more or less degree by their personal prejudices and wishes in the matter. It is for this reason that so much deference is to be paid to the findings of the trial court, which was in the midst of the discussion, and in a position to see to it that the claims of the parents were subordinated to what it conceived to be best for the child. The parents' wishes were to be considered and respected by the court, but they were not to be its chief concern.
Plaintiff has employed new counsel for the submission of the case of this court. Many questions are suggested by counsel regarding the failure of the evidence to disclose the circumstances of his mother's home, where defendant resides, and to which he will take the child whenever he has its temporary custody. The same might be said regarding the lack of evidence to show the environment in her own parents' home, where plaintiff resides, and where the child will spend by far the greater part of its time. The truth is that the adequacy of either home was never seriously questioned. On the contrary, the chief matter of concern was how the child would react to separation from its mother while it is still of tender years. As to this the parties agreed to be guided by medical advice and such actual experience as they might gain. After all the child is not to be taken out of the city, nor is it to be placed in the care of strangers. Instead it is to spend its time with the same close relatives with whom it would unquestionably have been associated if its parents' marriage had survived.
Defendant is voluntarily being most generous in making provision for the child's support, and it is distinctly to the child's advantage that no barrier be lightly erected which might be calculated in time to bring about a lessening of the affection which defendant presently entertains. But infinitely more important than this is the spiritual value which this childa little boymay be expected to derive from such intimate personal contact with the father as the circumstances of the case may properly permit. In the formation of a boy's character, and in the development of the manly traits which distinguish the best of his sex, there is no substitute for the example which a worthy father may set for him.
It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.
*181 The judgment of the circuit court is, accordingly, affirmed.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concur.