Viola **ZIMMERMAN**, Appellant,

v.

Rudolph **ZIMMERMAN**, Respondent.

No. 24778.

Kansas City Court of Appeals.
Missouri.

Dec. 4, 1967.

Henry H. Fox, Jr., Kansas City, for appellant.

Rodger J. Walsh, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal by the plaintiff, Viola Zimmerman, from a decree granting defendant, Rudolph Zimmerman, a divorce and the custody of the parties' adopted twin girls, born July 30, 1959, but granting plaintiff "reasonable rights of visitation."

The husband, now 40 years of age, and his wife, now 42, were married on December 11, 1954, and separated on or about December 3, 1965. Plaintiff had been previously married and divorced.

Plaintiff filed her suit on December 20, 1965. She charged in her petition that defendant had rendered indignities to her in that he constantly quarreled and nagged at her without justification or cause; that he was and is possessed with a violent temper and has oftentimes become enraged at plaintiff in the presence of her friends and relatives, embarrassing plaintiff; that defendant drinks to excess, is abusive toward the plaintiff, and has on repeated and frequent occasions absented himself from the home without justification or cause.

On January 20, 1966, defendant filed his cross-petition in which he alleged that plaintiff had rendered indignities to him in that she has repeatedly absented herself from the home without explanation or excuse; that plaintiff had indulged in intoxicating liquor to excess; has associated with other men; has failed to properly take care of the adopted children; that plaintiff's attitude and disposition have been hostile towards defendant; that plaintiff for many years has continuously engaged in unmerited bickerings and arguments with defendant.

Plaintiff testified that prior to the separation defendant would stay away from home all night. He would go to work in the morning and she would not see him until the following evening; that when she asked him where he had been he would tell her "it was none of my business, he didn't have to account to me;" that he stayed out until the bars closed two or three times a week and when he got home he would "be drunk and quite belligerent"; that he struck her on various occasions leaving physical marks and bruises on her body; that she told him many times that she would leave him. She further testified that she had been a good mother to the children and that defendant loves them. She was asked: "Have you ever during the period that you were married up until today associated with other men to the extent that you actually had, we will say a date with a man or went out with a man or something like that, other than your husband? A. No, I haven't."

Defendant testified that he treated plaintiff as a husband should treat his wife and worked long hours in order to obtain money to support his family. He denied that he drank to excess and also denied that he ever struck plaintiff. He further testified that plaintiff had been intoxicated prior to filing the suit for divorce; that in the last two years she had been intoxicated a couple of times; that he has seen her dancing with

other men in cocktail lounges and saloons; that he has seen her with a man named Meister twice since the filing of the divorce suit, once in a cocktail lounge at the Embers Restaurant, and once at the Holiday Inn on 50 Highway.

Defendant offered evidence that Meister owned a 1963 light-blue Ford Thunderbird automobile. Two witnesses testifying for defendant stated that on February 10, 1966, at 3:00 a.m., they were in the parking lot of the King Louie Bowling Alley; that at that time plaintiff and a man in a light-blue Thunderbird drove into the lot; that they sat in the car and appeared to be "kissing and smooching." There was other evidence offered by defendant showing plaintiff's association with Meister. It would serve no useful purpose to set it out in detail.

As is to be seen this is a case in which there is an irreconcilable conflict in the testimony. The plaintiff testified to a state of facts which if believed by the court, would entitle her to a divorce. The defendant and his witnesses testified to a state of facts which, if the court believed them, would entitle defendant to a divorce. In view of that situation, the rule so well expressed in the case of Eikermann v. Eikermann, Mo.App., 283 S.W.2d 391, 394, should apply here. "When the evidence is conflicting and the truth can be best determined by the conduct and demeanor of the witnesses on the stand, we defer to the trial judge who had the advantage of seeing them." (Citing cases.)

■ We defer to the finding of the trial judge that defendant was the innocent and injured party and entitled to a decree of divorce.

Plaintiff also contends that the court erred in awarding defendant the custody of the adopted girls. Defendant testified that he wanted custody of these children because he would give them a religious education; that his 44 year old unmarried sister would be willing to take care of the children in the event he was awarded their custody; that his sister, Viola W. Zimmerman, owns the apartment building in which defendant lives, "and she is in a position where she can retire from her job and she has been contemplating this for several years."

Defendant's sister, Viola W. Zimmerman, testified that she is employed at the Orschelm Bros. Truck Line at Moberly, Missouri; that she has worked for them for 24 years; that she has never been married, and that she lives with her sister Lucille K. Zimmerman. She further testified that she was acquainted with the children and that she was prepared to take care of them either in Kansas City or at her home in Moberly "whichever is advised." She belongs to the Coates Street Presbyterian Church in Moberly. She was asked: "Do you think these little girls would have a better life if they were living with you and their father than they would living with the mother? A. Yes, I do." Miss Zimmerman had previously stated that during the first weekend in April, 1966, she was in Kansas City at her brother's apartment; that on Sunday morning between 3:00 and 3:30 plaintiff appeared at the apartment door and "she was drunk and giggling."

Defendant testified that prior to the filing of the divorce suit he would come home in the evening and the children would be off with a baby sitter some place and plaintiff would be gone. He would spend an hour or two trying to find out which baby sitter the children were with and whether they were all right. This happened two or three times a week for the last month or so before plaintiff filed suit. On one occasion he found the children at the Giordano residence. When he arrived "there was four boys playing penny ante poker, and they had a fifth of Vodka, they had been drinking."

■ There is absolutely no rule by which it can be determined which of the two contending parties is entitled to the custody of the children upon separation, but each case must be judged on its own facts. Usually the custody of the children is awarded to the party who prevails in the divorce action. Wells v. Wells, Mo App., 117

S.W.2d 700; Wilson v. Wilson, Mo.App., 260 S.W.2d 770, 776. But the "guiding star" which courts must follow in determining the question of custody is the welfare and best interest of the children. There is an additional well settled rule "that the findings of the trial court in matters involving the custody of a minor child of divorced parents, while not binding upon the appellate court which must review the record for itself, are nevertheless not to be lightly disturbed and will be deferred to unless the appellate court is firmly convinced that the welfare of the child requires some other disposition." Lutker v. Lutker, Mo.App., 230 S.W.2d 177, 179.

 Plaintiff's present counsel in the oral argument relied heavily upon the holding of this Court in the case of Paxton v. Paxton, 319 S.W.2d 280. In that case the trial court decreed an absolute divorce to the father and awarded him full custody of the four minor children. This Court reversed that part of the judgment awarding the father custody of the children. There are fact differences between that case and the instant case. The oldest of the Paxton children expressed herself openly against her father and in favor of the mother. The child was afraid of her father and said her mother showed more interest in all of the children. Mr. Paxton was away a great deal of the time; he refused to assist and associate with the children; by his own admission he struck his wife; he admitted, but sought to explain away associations with other women. He used vile and profane language and ridiculed religious training. Thus the facts distinguish the *Paxton* opinion from the instant case.

The findings of the trial court should not be disturbed. Your Special Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner is

hereby adopted as the opinion of the Court and the judgment is affirmed.

HOWARD, P. J., CROSS, J., and VARDEMAN, Special Judge, concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.