**Lyle M. STOCKTON, Plaintiff-Appellant,**

**v.**

**Reva P. STOCKTON, Defendant-Respondent.**

**No. 8972.**

Springfield Court of Appeals, Missouri.

Oct. 27, 1970.

F. William Joyner, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for plaintiff-appellant.

Robert V. Groce, Springfield, for defendant-respondent.

TITUS, Presiding Judge.

The father of two boys, now 7 and 9 years of age, has appealed from the August 22, 1969, order of the Circuit Court of Greene County which modified its May 20, 1966, divorce decree relative to custody of the children. When the original decree was entered awarding the father a divorce, both parents were residing in Springfield and the court placed the care and custody of the

boys with the father but afforded the mother reasonable visitation rights and custody of the children on alternate weekends. By mutual assent of the parents through an out-of-court agreement, the decree was altered by permitting the mother to additionally have the boys every other evening, on "some holidays," and during the mother's vacation from her employment each year. Placidity paled, however, in November 1968 when the father changed jobs and moved to Columbia, Missouri, taking with him the two boys, his present wife, their child and his stepchild. Under the threat of a contempt of court citation against the father for violating the visitation and custody rights of the mother granted by the 1966 decree, the parties concocted yet another nonjudicial modification of the original judgment by agreeing that the father "would pay the transportation costs of the children [from Columbia to Springfield and return] on every other weekend during the school months, that [the mother] would have them in the summer * * * beginning right after * * * school was out through August 15, [that the father] was to have the right to see them every third weekend" in the summer and was to pay the mother $75 per month child support "during the summer months."

This last arrangement continued without serious incident until the early part of July 1969, at which time the boys were in their mother's custody at Springfield for the summer. It seems the father contemplated a camping trip with the boys when the mother had similar plans for the same period. In any event, after the mother and the boys returned from their outing and the children were in charge of a baby sitter while the mother was at work, the father took charge of the children and returned them to Columbia. Upon the heels of this occurrence came the mother's motion to modify the original decree by giving her full care and custody of the boys and $200 a month child support. Three days later the father filed a motion wherein he stated that since he was residing in Columbia the 1966 decree should be amended to delete

the alternate weekend visits of the boys with their mother because these visits were impractical and constituted an undue burden on the father and the children. As was later shown, the boys were usually transported during school months between Columbia and Springfield by commercial airline at a cost to the father of approximately $52 a month.

Following an exhaustive trial of the issues posed by both motions, the court nisi modified and augmented its initial decree in the following particulars: the mother was given custody of the boys for one week during Christmas vacation and each summer from noon on the fifth day of school vacation until noon on the fifth day before the commencement of school; she was also allowed $20 a week child support during her summer custody; the father was "awarded reasonable visitations and visitations with [the] children on alternate weekends in [the] summer" and was required "to pay [the] cost of transportation [for the children] to and from Springfield for [the children's] alternate weekend visitations" with the mother.

The "Points Relied On" in the father's appeal brief are that the "trial court erred in failing to order a reduction of [the mother's] visitation privileges" and "in decreeing that [the father] provide all transportation costs to transfer the minor children to and from Columbia, Missouri, to Springfield, Missouri." Such abstractions do not advise why it is contended the court was wrong, and were this not a case involving the welfare of children, we would sua sponte dismiss the father's appeal for total failure to comply with Civil Rules 83.05(a) (3) and (e), V.A.M.R. Graham v. Graham, Mo.App., 428 S.W.2d 941, 944 (1). Although Civil Rule 73.01(d), V.A.M.R., enjoins us to review court-tried cases upon both the law and the evidence, we need perform this function "only in respect to the specific matters urged by appellant as constituting error." Schlanger v. Simon, Mo., 339 S.W.2d 825, 828(1). At the time of oral argument we were informed the

father's specific objections to the modification order were that it failed to wholly delete the mother's right to have the children in her home during school months on alternate weekends and granted her custody of the boys for too long a period during the summer. Ergo, our attention will be principally applied to these particulars.

Contrary to the mode aped in many opinions concerned with child custody matters, a prolix recasting of the evidence adduced in this case is thankfully unnecessary as no one challenges the propriety of investing the father with major custody of the boys, nor questions the fitness of the mother to minor custody and reasonable visitation privileges. The parties agree that the children should be given ample opportunity to associate with both parents [Dupree v. Dupree, Mo.App., 357 S.W.2d 241, 243(3)], and acknowledge that visitation and custody rights are properly apportioned with the interests of the boys in mind [J. v. E., Mo. App., 417 S.W.2d 199, 203–204(5)] and not for the purpose of rewarding one parent or punishing the other for what may have transpired in the past. McCallister v. McCallister, Mo.App., 455 S.W.2d 31, 35(7); Wood v. Wood, Mo.App., 400 S.W.2d 431, 436(5). If so minded, we could parade an endless line of additional judicial pronouncements erected as guideposts in these causes (see them collected in 11 Missouri Digest, Divorce, ⊜⇒⊜⇒298–299), but the task seems dispensable for when the platitudes are shorn of superfluities the lone unbending and unadorned order is that it be determined what will best serve and promote the children's welfare. J——— G——— W——— v. J——— L——— S———, Mo.App., 414 S.W.2d 352, 360(5). While we search for ways to execute this command, we should nonetheless be alert to practicality and realize that the winds of reality will, to a degree, necessarily determine the course. The difficulties here took root when the father moved from Springfield to Columbia; the noxious weeds sprouting from that circumstance, as is true in most all like cases, were nourished by the inability of the parents to put into practice their declarations of selfless principles.

Counsel for the mother has cited several opinions (all of which we have read and more, too) approving frequent weekend visits by children in the home of the parent who was not awarded custody; some of these also present situations where the parents resided in different, though nearby or adjacent communities. Without belaboring in print the circumstances and issues concerned in the citations which distinguish them from those confronting us in the instant matter, it is enough to observe that there is perhaps no greater truism threaded among opinions relating to child custody than that each case must be decided upon its own particular facts. Zimmerman v. Zimmerman, Mo.App., 422 S.W. 2d 386, 388(2); Tootle v. Tootle, Mo.App., 329 S.W.2d 218, 223–224(6).

■ To say that the alternate weekend visits initially proved satisfactory under the original decree and simply echo what the parents themselves later agreed to continue in November 1968, side steps realism and neglects attention to altered conditions. Parents' agreements regarding child maintenance and custody are advisory only and not binding on a court [Olson v. Olson, Mo. App., 184 S.W.2d 768, 773; Kinsella v. Kinsella, Mo.App., 60 S.W.2d 747, 748(1)], because the personal welfare of minor children is ever the court's chief concern and parents' wishes must yield if opposed to the best interests of the children. Pratt v. Pratt, Mo.App., 363 S.W.2d 54, 58(3); Lutker v. Lutker, Mo.App., 230 S.W.2d 177, 178(1); 24 Am.Jur.2d, Divorce and Separation, § 783, at p. 890; Anno: Children— Alternate Custody, 92 A.L.R.2d, § 4, at p. 703. When the original decree was pronounced, the parents were both living in Springfield and the boys were four years younger than they are now; the November 1968 arrangement was conceived in an air of duress immediately after the father had moved to Columbia and before the frequent interchange of custody between separated cities had been subjected to experience.

The mother, without demonstrating how she could judge of the boys' attitudes and reactions to the trips upon returning to Columbia, opined "the exchange of visitation twice a month" did not upset the children. On the other hand, the father and his present wife, who had the better opportunity of observing the boys upon their return, testified the frequent weekend sojourns to Springfield were tiring experiences for the children, interfered "with their school activities and the things [like Cub Scouts, for example] they want to do there in Columbia," and necessitated a "few days of adjustment * * * before things really settle back to a normal family situation." Neither side offered any evidence concerning the summer visitation of the boys with their mother other than what the parties had agreed to on the subject in November 1968.

We recognize the oft-repeated rule that upon an appeal in divorce or child custody actions appellate courts should afford great deference to the trial court's findings because it occupies a more advantageous position to judge of the credibility of the parties and their witnesses. Hugeback v. Hugeback, Mo.App., 444 S.W.2d 23, 27(1). However, we do not see credibility as an issue in this case as we strive to perform our duty of reviewing the evidence anew to redetermine the vital issues as we see and understand them. Paxton v. Paxton, Mo.App., 319 S.W.2d 280, 282(1, 2). To get directly to the point, we are of the opinion that the frequent and constant shuttling of children between divorced parents residing in separate nonadjoining cities does not advance their welfare but rather tends to provoke feelings of instability and insecurity. J——— G——— W——— v. J——— L——— S———, supra, 414 S.W. 2d at 359(3); M——— L——— v. M——— R———, Mo.App., 407 S.W.2d 600, 604 (11), and cases cited. Such trips performed every other week, even for small boys riding jet airplanes, soon lose the spice of adventure and degenerate into disquieting chores that unduly disrupt what otherwise would be orderly home and school schedules. Although the air travel here involved may be of short duration, each trip necessarily entails the·expenditure of more time than is consumed in flight and serves to disassociate the boys from desired routines and regular companions. Furthermore, these incessant journeys deprive the children of participation in weekend organizational activities in their home community. We are also of the opinion that alternate weekend visitation privileges to the father while the mother has custody of the children in the summer is too disruptive for the good of all concerned, and that starting and terminating the children's summer visitations with their mother a scant five days after the cessation of school and five days before the commencement of school does not afford an ample period to properly arrange for their transmigrations, nor gives the children enough time to acclimatize or prepare for their scholastic endeavors.

In accordance with the principles and conclusions herein expressed as applied to the facts peculiar to this case, we believe it to be for the best interests of the children that the father's weekend custody of the children while they are in their mother's care during the summer should be restricted to one such weekend, that the mother's summertime custody of the children should not commence until fifteen days after school vacation starts and should terminate fifteen days before school commences, and that her custody of the children for weekend visitations during school months should be limited to one such weekend visit in each of the months of February, April and October. This latter arrangement, taking into account the mother's summer and Christmas vacation custody privileges, will place the children in her home at least every other month and, of course, does not diminish her general visitation rights at other reasonable times. Therefore, it is the order of this court that the part of the judgment and decree awarding custody of the children to the mother on alternate weekends during the school months and each summer from noon on the fifth day of school vacation until noon on the fifth day before the

commencement of school, and awarding the father alternate weekend visitation privileges while the children are in their mother's care in the summer, is reversed and remanded with directions to enter a judgment and decree awarding custody of the children to the mother each summer from noon on the fifteenth day of the school vacation period until noon on the fifteenth day before the commencement of school and for one weekend period in each of the months of February, April and October, and granting the father one weekend custody of the children while they are in the care of their mother in the summer. The decree shall also provide that in the event the parents cannot agree on the time of such weekend visits, then the father's weekend custody while the children are in the care of their mother in the summer shall commence on the fourth Friday after the mother obtains custody and the mother's weekend visitation privileges in the months of February, April and October shall commence on the second Friday of each such month. Otherwise, and in all things else, the judgment is affirmed.

STONE and HOGAN, JJ., concur.