**Linda Gail STANTON,**
**Plaintiff/Appellant,**

v.

**Elliot Efrem ABBEY,**
**Defendant/Respondent.**

No. 63708.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 8, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1994.

Application to Transfer Denied
May 26, 1994.

George E. Schaaf, Joe D. Jacobson, St. Louis, for plaintiff/appellant.

Margo L. Green, Karen M. Pittman, St. Louis, for defendant/respondent.

GRIMM, Presiding Judge.

Mother appeals the trial court's order modifying a decree of dissolution. She raises nine points. They relate primarily to the extent, timing, and expense of temporary custody; the imputation of income to her in determining the child support amount; and the awarding of income tax exemptions. We modify and affirm.

## I. Background

The parties' marriage was dissolved on May 1, 1990. The dissolution decree incorporated the parties' separation agreement. Pursuant to the agreement, mother was awarded primary legal and physical custody of their four minor children. However, father received periodic temporary custody, including six weeks each year, alternate weekends and a mid-week evening, and various holidays.

Also, in accordance with the agreement, the court ordered father pay child support of $562.50 per child, for total support of $2,250 per month. Further, the agreement gave each party the right to claim two children as exemptions for tax purposes. In addition, the agreement gave mother the option to insure father's life at her expense.

Thereafter, on January 31, 1992, mother remarried. After her remarriage, mother's new husband accepted a job in California. As a result, mother filed a motion to modify the prior dissolution decree. In this motion, she sought an order which would allow her to: (1) move children to California, and (2) change the beneficiary in father's life insurance policy.

In response, father filed a cross-motion to modify. In this motion, he consented to the children's move to California. However, he sought: (1) joint legal custody of children, (2) a reduction in his child support payments, (3) a change in the visitation and temporary custody schedule, (4) tax exemptions for all

four children, (5) an order requiring mother to pay the costs of transporting children for his periods of temporary custody, and (6) clarification as to the sharing of children's college expenses. The trial court modified the dissolution decree basically in accordance with father's motion.

## II. Legal Custody

We consider mother's first and second points together. They allege the trial court erred in "[1] reopening the question of legal custody because there was no evidence that a change in legal custody was 'necessary to serve the best interests' of the children ... [and 2] granting [father] joint legal custody because there was no substantial evidence that the parties were capable of cooperating and functioning as a parental unit."

■ A trial court shall not modify a prior custody decree unless it finds: (1) upon the basis of post-dissolution facts that a change has occurred in the circumstances of the children or the custodian, and (2) that the modification is necessary to serve the best interests of the children. Section 452.410.1.[1] If either a parent or child changes residence to another state, such change is sufficient to allow a court to modify a custody decree. § 452.411. Here, the required change in circumstances exists because of children's relocation to California.

■ Thus, we turn to whether the modification to joint legal custody was in children's best interest. Trial courts are vested with broad discretion in determining child custody, because they are in a better position to consider and weigh the evidence bearing on custody and the best interests of the children. *Rothfuss v. Whalen,* 812 S.W.2d 232, 235 (Mo.App.E.D.1991). We are required to "affirm the decision of the trial court unless firmly convinced the welfare of the children requires a different disposition." *Id.*

Mother contends there was no evidence that such a change was necessary to serve children's best interests. However, this contention overlooks the prior dissolution decree. Although that decree awarded mother both legal and physical custody, it specifically provided:

Each parent shall inform the other of any medical or health problems which arose while they had physical custody of any child, when the information of said medical or health problem would aid the other parent in the care and treatment of said child.

\* \* \* \* \* \*

Each parent shall have equal access to and, when requested, shall provide information to the other parent regarding the names, addresses, telephone numbers and other necessary facts concerning the providers of any education, medical or health care to the children.

Each parent shall at all times conduct themselves in a manner which reasonably promotes the cooperation and involvement of the other parent on any major matters which concern the educational, medical, religious upbringing, activities, sports, health care and like concerns of the children, *keeping in mind that the cooperation and involvement of both parents on such issues is in the best interests of the children.* (emphasis added).

The prior dissolution decree made clear that involvement by father in major decisions affecting children was in their best interests. Therefore, it could be argued that the modification granting father joint legal custody merely formalized the essence of the previous decree.

Further, the modification to joint legal custody is consistent with public policy as declared by the General Assembly in § 452.-375.3. Moreover, "[i]mperative to the best interests of the [children] in a joint custody arrangement are '[t]he commonality of beliefs concerning parental decisions and the ability of the parents to cooperate and function as a parental unit.'" *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo.banc 1991) (citation omitted).

■ Mother contends there was no substantial evidence that the parties were capable of cooperating and functioning as a pa-

1. All statutory references are to RSMo Cum. Supp.1993, unless otherwise specified.

rental unit. Thus, she alleges the modification to joint legal custody was not in children's best interests.

Our review of the record indicates that the evidence conflicted on the extent, ability, and perhaps desire of the parties to cooperate. We defer to the trial court to weigh and resolve evidentiary conflicts. However, suffice to say, the record reveals that father and mother share many common beliefs and have demonstrated an ability to cooperate on many issues, including: religion, education, health care, and leisure activities. Therefore, the trial court did not abuse its discretion in finding that joint legal custody is in children's best interests. Points denied.

### III. Summer Visitation

For her third point, mother alleges the "trial court erred in [1] awarding [father] seven weeks of temporary custody each summer, and [2] ordering that his period of temporary custody begin the day after school ends for the summer, because ... [1] the period of temporary summer custody is too long, and [2] the requirement of an immediate transfer does not give the children sufficient time to adjust to the end of the school year."

■ The prior dissolution decree granted father six weeks of temporary custody each year; four weeks could be taken consecutively. In addition, father had temporary custody periods with children on alternating weekends and Wednesday evenings. These periods of temporary custody were not possible after children's move to California. Further, mother stated in her motion to modify, "[T]he Court can allow liberal temporary custody rights to [father] even though the children will have to travel from California to Missouri and return." Therefore, the trial court did not abuse its discretion in granting father seven weeks of temporary custody each summer.

■ In addition, mother contends the trial court erred in ordering that children begin their temporary summer custody with father one day after school ends. She alleges that such immediate transfer of custody does not give the children enough time to adjust to

the end of the school year. She relies on *Stockton v. Stockton,* 459 S.W.2d 532 (Mo. App.S.D.1970).

In *Stockton,* the trial court awarded temporary custody of the children each summer. It began five days after the beginning of school vacation and ended five days before school began. *Id.* at 533. The appellate court, considering "the facts peculiar to this case," substituted fifteen days for the five days when the custody began and ended. *Id.* at 535.

*Stockton* is not controlling. Based on the facts here, the trial court did not abuse its broad discretion by ordering summertime custody to begin the day after school ends for the summer. By so doing, the trial court allowed sufficient time for children to prepare for the new school year. This was not the case in *Stockton.* Point denied.

### IV. Christmas Break Visitation

For her fourth point, mother alleges the "trial court erred in ordering [father's] temporary custody of the children during the Christmas vacation to begin on the first day off from school because this portion of the trial court's order is directly contrary to the wishes of both parties and of the children."

The record supports mother's contention. Further, at oral arguments, father's counsel acknowledged, "The parties agreed that [father's] visitation would begin on December 26th ... and end January 1." Father's counsel was asked, "Is there any reason not to modify the trial court's decree to reflect the agreement of the parties ... on this particular point?" She replied, "No, not on this particular point."

Therefore, we modify paragraph 6(a) of the trial court's order of modification. *See* Rule 84.14. Father's temporary custody during children's Christmas break each year shall begin when they arrive in St. Louis, which shall not be later than 5:00 p.m. on December 26. His temporary custody shall end on January 1; he shall place them on a flight back to California so they arrive there no later than 5:00 p.m.

## V. Child Support

We consider mother's fifth and sixth points together. They allege the trial court erred in "[1] modifying the amount of child support ... because there was no evidence of a substantial change in the parties' financial circumstances ... [and 2] imputing income to [mother] ... because (a) income may not be imputed in the calculation of child support to a custodial parent who stays home to be with her young children, and (b) there was no substantial evidence that [mother] could earn the amount imputed...."

### A. Substantial Change in Circumstances

■ The original dissolution decree ordered father to pay $562.50 per child for support, a monthly total of $2,250. In his modification motion, father sought a reduction of this amount. The trial court reduced father's obligation to $308 per child, a total of $1,232 per month. It found "a change of circumstances so substantial and continuing" to warrant a modification of the original decree.

Mother contends this ruling is erroneous because there was no evidence of a substantial change in the parties' financial circumstances. Section 452.370, in conjunction with Rule 88.01, governs modification of child support awards. Section 452.370.1 provides, in part, that the trial court:

> in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

Here, the marriage was dissolved and child support established on May 1, 1990. In 1989, mother and father had a combined income of approximately $185,000. In 1990, father's income was apparently $105,000 and mother's income was about $90,000, for a total of $195,000.

Mother's present husband's income is about $225,000. Thus, his income alone is more than father and mother previously earned together. Under § 452.370.1, present husband's income is a factor the trial court properly considers "in determining whether or not a substantial change in circumstances has occurred."

In addition, that section also directs the trial court to consider "the earning capacity of a party who is not employed." The trial court found that mother earned an average of $100,935 per year for the previous three years. As a result, the trial court did not err in considering mother's earning capacity concerning whether there had been a change in circumstances.

Therefore, considering mother's earning capacity and mother's present husband's income, the trial court's finding of a substantial and continuing change in circumstances is supported by the evidence and, therefore, was not erroneous.

### B. Imputation of Income

Next, mother contends the trial court erred in imputing income to her in its calculation of child support pursuant to Form 14. She asserts that in calculating child support, income may not be imputed to a custodial parent who chooses to stay home with the minor children of the marriage.

In the past, Missouri courts have imputed income based upon earning capacity in two different situations. First, where *noncustodial* parents failed to use their best efforts to secure employment to meet a child support obligation. *See, e.g., Overstreet v. Overstreet,* 693 S.W.2d 242, 246 (Mo.App.W.D.1985). Second, where a lethargic spouse receives *maintenance. See, e.g., Oldfield v. Oldfield,* 767 S.W.2d 134, 136 (Mo.App.E.D.1989). However, our courts have never imputed income to a custodial parent who chooses to stay home to care for the minor children of the marriage.

Historically, fathers had the primary common law duty to support their minor children. *Lodahl v. Papenberg,* 277 S.W.2d 548, 550 (Mo.Div. 1 1955). Fathers had this duty notwithstanding the fact that a mother may have had the independent means to do so. *Luplau v. Luplau,* 117 S.W.2d 366, 367 (Mo.

App.W.D.1938); *O'Brien v. O'Brien,* 485 S.W.2d 674, 677 (Mo.App.E.D.1972).

In 1973, the General Assembly enacted the Dissolution of Marriage Act. The Act recognized fathers' primary duty. § 452.340(1) (repealed 1988). In considering the factors a trial court should consider in awarding child support, the first factor enumerated was "The father's primary responsibility for support of his child." *Id.* As indicated, that statute was repealed in 1988. 1988 Mo. Laws, 951. The section enacted in lieu of the repealed § 452.340 does not mention "father's primary responsibility." § 452.340, RSMo Cum.Supp.1993.

Also, this shift in responsibility is reflected in Rule 88.01 and Form 14. These require the trial court to consider the income of both the custodial and noncustodial parent.

Further, we note the Directions for Use of Form 14 concerning Worksheet, line 1. It says, in part, "If either parent is unemployed or underemployed, child support may be calculated *in appropriate circumstances* based on a determination of potential income." (emphasis added). The court is directed to consider "whether [the unemployed or underemployed] parent is custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." However, the rule is silent as to the result of that consideration. Thus, the rule does not mandate that a trial court reach a particular result. *Cf. King v. King,* 865 S.W.2d 403, 405 (Mo.App.E.D.1993)

Only one Missouri case has discussed imputing income for child support in the context of a custodial parent. In *Markowski v. Markowski,* 736 S.W.2d 463 (Mo.App.W.D. 1987), seven years after the marriage was dissolved, the trial court reduced the child support from $400 to $325 per month for each of two children. In addition, the trial court terminated wife's maintenance. The trial court found "that the wife was able to support herself through appropriate employment." *Id.* at 465.

Our western district colleagues affirmed the maintenance termination. However,

they reversed the child support reduction, saying:

> The matter of child support, however, stands on different ground.... The duty of [mother] to expend efforts at attaining self-sufficiency for herself and a failure to meet that obligation is not a tangible resource or benefit to the children unless and until some income materializes. For obvious, practical reasons, the childrens' needs must be evaluated in terms of current disposable income, not on expectations.

*Id.* at 466.

The facts in *Markowski* are substantially different from those before us. In *Markowski,* the trial court dissolved the parties' marriage in 1979. During the nine-year marriage, mother did not work outside the home. Following the dissolution, mother started a business. Tax returns for 1982, 1983, and 1984 each showed a loss, with the 1984 loss amounting to $12,416. There is no indication that mother had any gainful employment from 1979 to the time father's motion to modify was heard in November, 1986. Further, although not mentioned in the *Markowski* opinion, § 452.340 (repealed 1988) placed the primary responsibility for child support on father.

Here, in contrast, mother worked outside the home as a physician from at least 1980 to 1992. During that time, the parties' four children were born. She was gainfully employed, averaging $100,935 for the years 1990–1992. She remarried January 31, 1992, and ceased practicing medicine July 15, 1992.

Other states have considered whether a trial court can impute income. In Massachusetts, the child support guidelines specifically permit the trial court to consider potential earning capacity. The guidelines require trial courts to "take into consideration the education, training, and past employment history of the party." However, the guidelines do not "apply to a custodial parent with children who are under the age of six living in the home." *Canning v. Juskalian,* 33 Mass.App. Ct. 202, 597 N.E.2d 1074, 1077 (1992).

In *Canning,* the court observed that any attribution should be approached with "realistic caution." Among factors favoring non-

attribution of income were: (1) giving priority to the "nurturing parent" doctrine, (2) not punishing children for their parents' actions, (3) avoiding the creation of economic disincentives to remarriage and the rearing of children, and (4) recognizing that the income generated by attribution is often fictional and, therefore, of no benefit to the children. *Id.* at n. 8, 9.

On the other hand, factors favoring attribution include: (1) minimizing the economic impact of family breakup on children by discouraging parental unemployment or underemployment, and (2) recognizing that staying at home to care for children may constitute volitional unemployment. *Id.*

In Pennsylvania, the court has recognized that the "child care contributions of an unemployed, nurturing parent are important, and [their court has] stated that an unemployed, nurturing parent should not be expected to find employment to advance a child's economic welfare at the expense of the child's emotional welfare." *Stredny v. Gray,* 353 Pa.Super. 376, 510 A.2d 359, 363 (1986).

In refusing to impute income to the custodial parent, the court noted that the parties' child was attending a school for emotionally disturbed children. Also, mother had a three and one-half year old child by her present husband. *Id.* The appellate court affirmed the trial court's refusal to attribute additional income to mother. *Id.; see also, In re Marriage of Pote,* 847 P.2d 246 (Colo.Ct.App. 1993) (trial court erred in imputing income on a full-time basis to mother of four-year old child with Down's syndrome).

Also, we note some pertinent comments from *Thomas v. Thomas,* 248 N.J.Super. 33, 589 A.2d 1372, 1373 (Ct.Ch.Div.1991). There, mother cared for two of the parties' children, ages eleven and seven. In addition, she cared for two children by her present husband, a three-year old and a two-month old. The court recognized that although New Jersey decisions *permit* imputing income, no decision *requires* imputing income under all circumstances. The court further observed, "[I]t is important to note that [mother] is *not* unemployed. She is employed on a full-time basis as a care giver to her young children.

This employment is, however, not compensated monetarily." *Id.*

Based on these and other cases, as well as Missouri's dissolution statutes, we conclude that trial courts have discretion to impute income to an underemployed or unemployed custodial parent. We emphasize that imputing income should occur only "in appropriate circumstances." Form 14, Directions for Use.

What constitutes "appropriate circumstances" will depend on the facts and must be determined on a case-by-case basis. We have previously mentioned factors that other courts have found helpful in making this determination. Among additional factors that a trial court should consider are: (1) the age, maturity, health, and number of children in the home; (2) the custodial parent's employment history, including recency of employment and earnings, as well as the availability of suitable employment; (3) the age and health of the custodial parent; (4) the availability of appropriate child-care givers; (5) the relationship between the expense of child-care givers and the net income the custodial parent would receive; (6) the cost, if any, for transportation, suitable clothing, and other items required for the custodial parent to have the imputed employment; (7) the custodial parent's motivation or reasons for being at home; and (8) the adequacy of available resources if the custodial parent remains at home.

Applying the various factors to the facts here, we find the trial court did not abuse its discretion in imputing income to mother. The parties' four children were born in 1980, 1982, 1984, and 1987. Apparently, the children are in good health. Each child had physical and dental examinations before starting school in September, 1992, and mother's testimony did not disclose any health problems.

Further, each child attends school. The three older children had attended school in St. Louis and were excellent students. Their California report cards indicate that they continue to do well.

Also, mother is a highly trained physician, with an internal medicine specialty. She

practiced medicine from at least 1980 until July 15, 1992. Her earnings during the last three years she worked averaged in excess of $100,000. Mother has signed up to take the California medical boards and intends to obtain a California license.

The record is silent as to mother's age and health. Also, there is not any testimony about the availability of appropriate child-care givers. However, while a single working parent in St. Louis, mother had a full-time housekeeper at a cost of $1,800 per month. It is clear that from a financial view, mother's potential income greatly exceeds the financial expenses she would incur in working.

When asked why she was not employed outside the home, mother said there were a number of reasons. Specifically, she said:

> The primary reason, this is really the first opportunity I have had to be home with my children. Moving to a new place there is going to be a lot of adjustments. We felt it was very important for me to be home and helping establish a new routine for everyone. I also do not have a license to practice in California at this point.

Also, mother said that she became pregnant "some months ago." She miscarried after three or four months and that "was part of the reason" she did not return to work.

Finally, the adequacy of available resources is not a significant issue on whether mother works outside the home or not. Thus, the totality of the record here supports a finding that "appropriate circumstances" exist to permit the trial court to impute income to mother. Mother's fifth and sixth points are denied.

## VI. Income Tax Exemptions

In her seventh point, mother contends the "trial court erred in awarding the income tax exemptions for [two named children to father] because the parties in their separation agreement had agreed that [mother] would claim these tax exemptions."

Section 452.325.6, RSMo 1986, covering separation agreements, states:

> Except for terms concerning the support, custody or visitation of children, *the decree*

*may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides.* (emphasis added).

■ "Case law interpreting [§ 452.325] clearly establishes that unless a separation agreement expressly provides that any of its terms are not to be incorporated into the decree it becomes part of the decree and is enforceable by the court." *Berman v. Berman,* 701 S.W.2d 781, 785 (Mo.App.E.D. 1985). "Once incorporated, the agreement is then subject to modification by the court *unless the agreement expressly limits or precludes modification." Id.* (emphasis added).

Here, the separation agreement stated:

> 12. [Mother] shall have the right to claim [two named children] as exemptions on her federal and state income tax returns and [father] shall have the right to claim [two other named children] as exemptions on his federal and state income tax returns....

It further provided:

> 14. All of the terms of this Separation Agreement shall be incorporated into the Decree of Dissolution of Marriage herein entered....
>
> \*    \*    \*    \*    \*    \*
>
> 18. Except for the terms of paragraphs 6, 7 and 8 of this Agreement relating to child custody and child support, the terms of the Decree based upon this Separation Agreement and the respective obligations of the parties *shall not be subject to modification by any court,* except that the parties may modify said terms by their written and mutual agreement. (emphasis added).

■ The dissolution decree specifically stated "that the separation agreement between the parties is not unconscionable." In the modification order which we are reviewing, the trial court stated:

> [Father] shall have the right to claim all of the minor children as deductions in any Federal, State or local tax returns filed beginning with tax year 1992.

This award is erroneous. The dissolution decree incorporated the separation agreement. As a result, the non-modifiability

clause of paragraph 18 of the separation agreement became part of the decree under § 452.325.6. Thus, the modification of tax exemptions is precluded.

Therefore, we reverse paragraph 8 of the modification order. Mother is entitled to claim the two named children as exemptions on her federal and state income tax returns pursuant to the separation agreement, as incorporated in the dissolution decree.

### VII. Transportation Costs

■ In her eighth point, mother contends the "trial court erred in ordering [her] to pay the full cost of transporting the children between California and St. Louis for their periods of temporary custody with [father] because such transportation costs should be evenly divided ... except where there is great economic disparity between [the parents]...."

The trial court has broad discretion in apportioning the expense of exercising child custody rights. *Ronzio v. Ronzio,* 673 S.W.2d 100, 101 (Mo.App.E.D.1984). We review the terms of the resulting order only for a manifest abuse of that discretion.

Here, the trial court did not abuse its discretion by ordering mother to pay children's transportation costs for their periods of temporary custody with father. Mother and her new husband made a voluntary decision to move to California. Father did not attempt to prevent children from leaving Missouri.

The dissolution decree had allowed father visitation on alternating weekends and Wednesdays. Under the modification order, he lost these visits. We do not find it inequitable for mother to pay the transportation costs which result from her moving to California with the children. The trial court did not abuse its discretion. Point denied.

### VIII. Life Insurance Premiums

For her ninth point, mother alleges the "trial court erred in entering judgment against [mother] for $1,633 to reimburse [father] for life insurance premiums as [father] failed to comply with the dissolution decree in connection with the insurance."

The dissolution decree provided in part: [Mother] shall have the right to insure [father's] life at her expense and [father] shall cooperate fully with [mother] in this regard; including [father's] cooperation in submitting to any required medical examinations and in obtaining such insurance through his employment, at [mother's] expense. At all times, [father] shall provide [mother] with any and all information and/or documentation available and/or accessible to [father] regarding any and all life insurance on [his] life that is available to [him] through his employment.

There was conflicting evidence on this point. Mother contends that father did not permit her to insure his life as provided by the dissolution decree. In contrast, father testified that he obtained the life insurance through his employer at mother's request. He stated that he provided mother with proof that the insurance was in effect on a yearly basis; plus, he corresponded with her on that subject at least one or two other times. Finally, father stated that he provided mother with all of the information concerning the insurance policy his employer had given him.

"When contradictory testimony is presented to the trial court, we give deference to the trial judge, who is in a better position to assess the credibility of the witnesses." *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App.E.D.1992); *see also* Rule 73.01(c). The trial court's order requiring mother to reimburse father for the life insurance premiums is supported by the record. The record reveals that father complied with the terms of the dissolution decree.

■ Also, mother contends that the insurance policy under which father seeks reimbursement is not the policy provided for in the dissolution decree. She bases this contention on the fact that she was not the named beneficiary. The beneficiaries of the policy were children through father's estate.

Suffice to say, the language of the dissolution decree does not dictate who has the insurable interest in father's life, or who shall

be the beneficiary of the policy. It merely allows mother to insure father's life. Further, there is evidence in the record that mother was aware that children were the beneficiaries under the policy. Point denied.[2]

The trial court's judgment is affirmed, except as to the award of temporary custody at Christmas and the award of income tax exemptions. As to those awards, the judgment is modified as set forth above. Costs are assessed equally to the parties.

CARL R. GAERTNER and AHRENS, JJ., concur.

2. In his brief, father requested that we: (1) strike portions of mother's brief as not complying with Rule 84.04(a), and (2) summarily overrule mother's points relied on as being deficient under Rule 84.04(d). Although some of the points relied on do not comply, we elect to review them. Both requests are denied.