Michelle YOUNG, Appellant,

v.

Jonathan BECKMAN, Respondent.

No. WD 63179.

Missouri Court of Appeals,
Western District.

Nov. 9, 2004.

Steven Wolcott, Liberty, for Appellant.

John Wm. Dennis, Jr., Independence, for Respondent.

RONALD R. HOLLIGER, Judge.

Michelle Young appeals the trial court's judgment modifying the terms of a prior dissolution judgment with regard to issues of parenting time, imputation of income with regard to child support, and the award of the dependent income tax exemption. We conclude that she has failed to preserve for appeal her claim that the trial court erred in granting the children's father more parenting time and that the trial court did not abuse its discretion in declining to impute income to the children's father. We do find, however, that the trial court erred in its determination that a claimed non-modifiability provision of the parties' original separation agreement deprived it of jurisdiction to modify the dissolution decree's allocation to the father of the dependent income tax exemptions with regard to one of the parties' three children. The judgment below is affirmed in part and reversed and remanded in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The marriage between Michelle (Beckman) Young ("Mother") and Jonathan Beckman ("Father") was dissolved in June 2000. The dissolution decree incorporated the parties' separation agreement. Custody and support of the parties' three minor children was addressed within the agreement. Father was granted primary physical custody of the eldest child, Jon Jay ("J.J."), who was then nearly fifteen years of age. Mother was granted primary physical custody of the two daughters, Victoria and Ashlie, who were fourteen and nearly nine years of age, respectively. Father was ordered to pay Mother $178 per month in child support under the decree.

In the parenting plan within the separation agreement, each parent initially received the dependent income tax exemptions for the children in his or her custody. The agreement also provided that, once the exemption for the eldest son was no longer available to the parents, that each parent would receive one of the tax exemptions remaining for the two minor children. Then, when only one dependency tax exemption could be claimed, the parties would share that exemption, each claiming the exemption in alternate years. Language was also included directing the parties to execute and provide each other with IRS Form 8832 in order to facilitate the claiming of those exemptions.

The separation agreement also contained language purporting to limit modification of its terms. Specifically, the settlement agreement stated that "If, at some later date, any modification hereof is agreed upon between the parties, the same shall be reduced to writing, signed and acknowledged by them, before it shall become effective." The separation agreement was incorporated, in its entirety, within the dissolution decree.

Roughly sixteen months after the dissolution, Father was terminated from his employment as a security guard at Honeywell. His termination was apparently as the result of cheating at a required live-fire weapons qualification test. He obtained replacement employment shortly thereafter, but at a lower salary. Between then and the time of trial, Father had changed employment two additional times, for increasing salaries, but was still not earning as much as his previous salary at Honeywell.

After the original decree, Father encountered problems exercising visitation with the younger daughter, Ashlie, who resisted spending time with him. There was evidence that Mother had not encour-

aged visitation, even telling her daughter to call the police if she did not want to visit with Father. There was also testimony that tensions were exacerbated because Mother videotaped Father's attempts to exercise visitation. Sometime prior to the filing of the present action, Father sought and obtained a Family Access Order enforcing the visitation provisions of the original decree. Even after that order, there were still problems with Father obtaining visitation with regard to the younger daughter, Ashlie.

At the time of trial, J.J. Beckman was also no longer living with Father. In May 2002, the young man moved out of Father's residence and began living with his maternal grandmother. Evidence at trial indicated that J.J. intended to move into his mother's home at the conclusion of the 2002–2003 school year.

Mother filed a motion to modify in August 2002, which she later amended. In her amended motion, Mother asked that she be awarded primary physical custody of J.J. Beckman as well as an increased amount in monthly child support. Her motion was granted, though the trial court granted somewhat different relief. The trial court's judgment granted the parties joint legal and physical custody of all three children, with the children's primary residence to be with Mother. Father was awarded significant parenting time with the children, including two weekend overnight visitations every other week and eight weeks of parenting time during the children's summer vacations. This represented an overall increase in Father's parenting time, as compared to the original dissolution decree. It also rejected the Form 14 calculations presented by both parties and adopted its own Form 14, under which it calculated Father's presumed

child support amount to be $220 per month.

Mother appeals.

## DISCUSSION

Mother raises three points on appeal. She first contends that the trial court erred in expanding Father's parenting time because it would interfere with the children's extracurricular activities and outside employment obligations. Second, she claims the trial court erred by refusing to impute income to Father because he lost his position at Honeywell due to misconduct. Third, Mother asserts that the trial court erred by refusing to modify the original decree's allocation of the children's dependent income tax exemptions, taking the position that she should have been awarded all of those exemptions.

■ We will reverse the trial court's judgment upon a motion to modify a dissolution decree only if the judgment is not supported by substantial evidence, it was against the weight of the evidence, or the trial court incorrectly declared or applied the law. *Newell v. Rammage*, 7 S.W.3d 517, 521 (Mo.App.1999). We view the facts, and the reasonable conclusions that may be drawn from those facts, in the light most favorable to the judgment, discarding evidence and inferences to the contrary. *Livingston v. Livingston*, 58 S.W.3d 687, 688 (Mo.App.2001). We grant considerable deference to the trial court, even where the evidence might support a different conclusion. *Baker v. Baker*, 60 S.W.3d 19, 22 (Mo.App.2001). Reversal is only proper when this court is firmly convinced that the trial court's judgment is wrong. *In re Snoke*, 913 S.W.2d 407, 409 (Mo.App.1996).

*I. Parenting Time and Children's Extracurricular Activities*

■ In the first of her three points on appeal, Mother contends that the trial

court erred in its award of increased parenting time to Father because that increased parenting time would interfere with the children's extracurricular activities and job-related obligations. Her argument, however, addresses an entirely different issue. That argument instead asserts that the award of parenting time exceeded that requested by Father in his pleadings. Mother asserts that the summer parenting time division should remain as it was in the previous order, where it is equally split between the two parents, except that each party should have an extended period of time for a summer vacation parenting time with the children and that the weekday parenting time must also be revised.

The remainder of Mother's argument on this point consists merely of recitation of cases that an award of visitation must be made in accordance with a child's best interests. She fails to develop any argument as to why the trial court's award is not consistent with the children's best interests.

Simply put, Mother's stated point on appeal and her argument on appeal raise completely different claims of error. As such, her first point preserves nothing for appellate review. *Engeman v. Engeman*, 123 S.W.3d 227, 236 (Mo.App.2003). Point denied.

## II. Imputation of Income

■ In her second point on appeal, Mother contends that the trial court erred by failing to impute income to Father, based on the fact that he was terminated from his employment at Honeywell due to misconduct.[1] Father contends that the tri-

al court properly exercised·its discretion in declining to impute income to him, based upon the evidence that Father obtained replacement employment.

■ Review of a child support award is a two-step procedure. *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo.App.1996). In the first step we determine whether the trial court's determination of the PCSA is supported by the evidence, is not against the weight of the evidence and does not erroneously declare or apply the law. *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App.2002). The determination of whether income should or should not be imputed to a parent is part of the first step under *Woolridge* and our *subsequent review*. Thus, we look at the evidence and judgment under our usual *Murphy v. Carron* type of review to see if the trial court's refusal to impute income was proper.

■ We view the evidence in the light most favorable to the court's award, disregarding evidence to the contrary and deferring to the trial court, even where the evidence could support a different conclusion. *Id.* (quoting *Keller v. Keller*, 18 S.W.3d 589, 593 (Mo.App.2000)).

■ A trial court may impute income to a parent, for purposes of the Form 14 calculation, when that parent has voluntarily and deliberately become unemployed or underemployed, thereby reducing his or her income. *See Haden v. Riou*, 37 S.W.3d 854, 861 (Mo.App.2001).

■ While imputation is appropriate when a parent leaves his or her employment voluntarily, it has also been permitted when the parent was involuntarily terminated. *See Silverstein v. Silverstein*,

---

1. We note that Mother fails to cite any evidence in the record regarding the basis for Father's termination from Honeywell. As such, we could deem the point unpreserved. *See* Rule 84.01(i); *Cooper v. Bluff City Mobile*

*Home Sales, Inc.*, 78 S.W.3d 157, 165 (Mo. App.2002). We reach the merits of Mother's point, however, because a cursory review of the exhibits filed at trial readily reveals the basis for Father's termination.

943 S.W.2d 300, 302 (Mo.App.1997). In the latter circumstance, imputation may be appropriate where the parent has failed to use his or her best efforts to secure new employment, refused offers of employment, or failed to make a showing that the unemployment was something other than temporary. *See Walker v. Walker,* 936 S.W.2d 244, 248 (Mo.App.1996). The central question is whether the parent made a "good faith attempt to obtain new employment." *Silverstein,* 943 S.W.2d at 302.

Here, there was evidence that Father's employment with Honeywell was terminated due to misconduct. There is no suggestion in the evidence, however, that Father's actions were intended as a deliberate attempt to reduce his income in an effort to evade his child support responsibilities. Moreover, the evidence would support the conclusion that Father made good faith efforts to find employment after his termination, and did, indeed, find new employment within two weeks of his termination from Honeywell. He has subsequently changed employment on two occasions for higher salaries. Mother does not contend on appeal that Father did not make such efforts nor does she direct us to any evidence in the record that indicates that Father should have been able to find other employment at a higher salary.

Under these facts, we hold that the trial court's refusal to impute income was supported by the evidence. There was sufficient evidence to support its conclusion that Father used his best efforts to find replacement employment after his involuntary termination from Honeywell, and that conclusion was not against the weight of the evidence. Therefore, we deny Mother's second point on appeal.

### III. Allocation of Dependent Tax Exemptions

■ In her final point on appeal, Mother argues that the trial court erred in refusing to award her the dependent tax exemptions for all three children, due to the fact that the Form 14 calculations assume that the parent receiving child support will receive the benefit of the dependent tax exemption for that child. Husband contends that the trial court correctly concluded that it could not modify the allocation of the tax exemption because of provisions within the parties' separation agreement allocating that exemption and barring modification of that allocation absent written consent of both parties.

■ Generally speaking, if a separation agreement is incorporated into a dissolution judgment, it becomes part of the judgment and may be modified, at least in certain respects, by a court in a subsequent modification proceeding. *Paffrath v. Paffrath,* 977 S.W.2d 283, 284 (Mo.App. 1998). However, the parties to a separation agreement can include language within the separation agreement that bars or limits the court's power to make such a modification. *Id.* Such limitations are enforceable, except with regard to issues concerning child custody, visitation, and support. *See* § 452.325.6, RSMo 2000.[2]

We are aware of only two reported cases addressing the question of whether a trial court can reallocate the dependent tax exemptions when they have been previously allocated by a separation agreement. In *Seip v. Seip,* 725 S.W.2d 134 (Mo.App. 1987), this court was faced with a separation agreement that allocated the income tax exemption and concluded that the trial court could modify the original allocation despite the separation agreement. *Id.* at

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

137. We reached that conclusion, however, because the separation agreement in question did not contain any provision barring later modification of the agreement. *Id.*

The Eastern District, in *Stanton v. Abbey,* 874 S.W.2d 493 (Mo.App.1994), addressed the question of whether a tax exemption allocation made within a *nonmodifiable* separation agreement could be changed by the trial court in a subsequent modification proceeding. In that matter, the dissolution decree awarded Mother primary legal and physical custody of the parties' four children, with Father given periodic temporary custody. *Id.* at 494. Pursuant to the parties' separation agreement, each parent was allocated the tax exemptions for two of the children. *Id.* That separation agreement, which was incorporated into the dissolution decree, also included this language:

> Except for the terms of ... this Agreement relating to child custody and child support, the terms of the Decree based upon this Separation Agreement and the respective obligations of the parties *shall not be subject to modification by any court,* except that the parties may modify said terms by their written and mutual agreement.

*Id.* at 500. The Eastern District held that this language prohibited the trial court from modifying the prior judgment by changing the allocation of the dependent tax exemption to the other parent. *Id.* at 500–01.

In the present matter, the tax exemptions for the three minor children were allocated in the separation agreement. That separation agreement also contains language limiting, to some extent, the means by which the agreement can be modified. Therefore, the threshold question is whether the trial court was correct in its determination that the language in

the separation agreement precluded it from changing the tax exemption allocation made within the agreement. As indicated above, the separation agreement provides that "If, at some later date, *any modification hereof is agreed upon between the parties,* the same shall be reduced to writing, signed and acknowledged by them before it shall become effective." (emphasis added).

Looking to the plain language of this provision of the separation agreement, it is clear that it places conditions on the *parties'* ability to modify its terms by mutual agreement. Such modifications must be reduced to writing and then signed and acknowledged by both parties. This provision appears to be intended to prevent the modification of the decree through oral agreement. The settlement agreement, however, is silent with regard to the power of the court to modify its terms. It does not, as in *Stanton v. Abbey,* contain express language barring the court from modifying its terms. Nor does it limits the court's authority by implication by stating that the *only* way the agreement can be modified is through written consent of both parties. *See, e.g., Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 391 (Mo. banc 2001) (separation agreement included language stating that "modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement.").

We conclude, therefore, that *Seip v. Seip* is controlling, here. The trial court erred in its determination that it was without jurisdiction to allocate the dependent income tax exemption, given that the separation agreement incorporated into the dissolution decree did not place limits on the court's ability to modify its terms. We, therefore, sustain Mother's third point on appeal and reverse and remand the case

for further proceedings consistent with this opinion.

We note, however, that the trial court is not required by the Form 14 assumptions to allocate the dependent tax exemption to Mother on remand. However, if it does not do so, then it must rebut the Form 14 calculation as unjust and inappropriate, as we held in *Conrad v. Conrad,* 76 S.W.3d 305 (Mo.App.2002).

The judgment is reversed and remanded for reconsideration of the issue concerning the tax exemption. In all other respects it is affirmed.

THOMAS H. NEWTON, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.